The prisoner is indicted, together with Mary Meadows, for the murder of James Meadows, her husband, the first as principal and the second as accessory before the fact. The prisoner was tried alone. On the trial a witness was called to state "acts and declarations of Mary Meadows tending to show hostility to her husband and an intention to cause some great bodily injury to be inflicted on him." (323) Objection being made on behalf of the prisoner, the prosecuting officer stated he intended to introduce witnesses to prove a conspiracy between the prisoner and Mary Meadows. The evidence was admitted by the court. What these acts were, or what were the declarations of Mary Meadows, the case does not inform us, any further than that they tended to show the state of her feelings towards the deceased. An accomplice is certainly a competent witness, either for or against a partner in the perpetration of the offense, if he be not a party to the record; and if he be, his declarations will be heard, under certain restrictions. A simple bald declaration will not be received unless it be, in itself, an act; as in treason, to make it evidence, it be accompanied by an act of which it is explanatory, for which act his accomplices are responsible; and the declaration must be a part of the res gestae, and be done in furtherance of the common design. Fur Co. v. United States, 2 Peters, 364; Gooding's case, 12 Whe., 460; 1 Phil. on Ev., 414; 4 Haw. P. C., Book 2, ch. 46, sec. 34;Cabiness v. Martin, 15 N.C. 110; 1 Greenleaf Ev., 345; S. v. Poll,8 N.C. 442. The declarations and acts of Mary Meadows *Page 228 
had none of the qualities rendering them evidence against the prisoner. The acts, as far as the case discloses, were not such as he was answerable for, nor were they done in furtherance of the common design, to wit, to murder James Meadows. They were descriptive, simply and entirely, of her feelings towards her husband, without pointing in the most remote manner to the prisoner. For this reason, if there was no other, I should send the case back to another jury.
But there is another and still more formidable objection to the sustaining of the verdict in this case. The prosecuting officer, when he offered in evidence these acts and declarations of Mary Meadows, (324) was sensible that at that state of the case they were not admissible; to make them so, he declared his intention to prove a conspiracy, and it is to be presumed such a conspiracy as would authorize their introduction. The prisoner was on trial for the murder of James Meadows, and the conspiracy to be proved was one to effect that crime; and so the court must have understood it. Does the case show thatany conspiracy was proved? It states, "that evidence was then introduced to show a guilty connection, and that it was not thought necessary to go into particulars." It appears that after the introduction of this testimony the court took a recess, and upon resuming the trial the prisoner's counsel renewed his motion, or, rather, informed the court that he had not abandoned it, and the evidence was not withdrawn from the jury. Whatever doubt might rest upon the admissibility of the acts and declarations of Mary Meadows, as proved, coupled with evidence of a conspiracy, to my mind it is perfectly clear that, as the case appears here, they were not admissible. The words "guilty connection" have no definite meaning as descriptive of any particular offense. The combination of a parcel of smugglers is a guilty connection; so to rob, or to commit an assault or battery, or to strike for higher wages, all these are guilty connections, punishable by law. But the words, in common parlance, when applied to a man and woman, mean a carnal connection. If A. charge B., a woman, with having a guilty connection with C., ninety-nine men out of every hundred will understand it as a charge of incontinence on the part of B. And if the words were introduced into a declaration for slander, with proper averments, no jury would hesitate to hold them slanderous. And we are required to hold that these vague expressions show that a conspiracy to murder James Meadows existed between the prisoner and Mary Meadows, for it is the only ground upon which her acts and declarations were, or could be, held admissible. It is precisely as if the State, after promising to prove the existence of (325) a conspiracy, had offered no evidence of it. In such a case it cannot be denied that the admission of the declarations would be illegal and erroneous. The State did not redeem its pledge; it did not *Page 229 
prove a conspiracy of any kind, and there was error in the admission of the declarations of Mary Meadows. It is, however, objected that the prisoner cannot now avail himself of the objection, as he has not put it into his bill of exceptions. This is a court of errors, and the proper way to bring cases here for our consideration is by a bill of exceptions; but for the convenience of all parties, the statement of the case, under the sanction of the court, is received in the place of a bill; and it is true, we can take no notice of any objection which is not stated in the case, or does not appear upon the record, properly so called. The prisoner's objection does appear upon the face of the bill tendered by him, as I understand it. Whether there was such a conspiracy as would legalize the acts and declarations of Mary Meadows as evidence against the prisoner was a preliminary question of law and of fact to be decided by the presiding judge. With the errors committed in adjudging the facts submitted to him we have nothing to do; our business is only with errors of law. At the time the evidence of the acts and declarations of Mary Meadows were received it was admitted that it would not be evidence unless a conspiracy was proved. The case does not show that any conspiracy was proved, but in its place a guilty connection, which might or might not be evidence of one, but assuredly was not one; and his Honor in so deciding that it was, as we must understand from the case as sent here, committed an error in law. It is no answer to say that such could not have been in fact the decision of the court. I cannot look to anything which is not in the case, more particularly when the life of a human being is at issue. If the case had stated that a conspiracy to murder James Meadows was proved, the prisoner, so far as this question is concerned, would have been concluded, unless he had (326) set forth in his exception some legal objection to it — as that it was a conspiracy to commit some other crime; and the acts and declarations of Mary Meadows, in furtherance of the common design would have been evidence against him. The case states that "it is unnecessary to go into particulars," that is, of the guilty connection; but the notes of the presiding judge were sent up. I have not looked into them, as they constitute no part of the case. S. v. Godwin, 27 N.C. 403. It is objected that these particulars ought to have been set out by the prisoner in the case. I cannot see to what purpose or effect. To my apprehension, the prisoner has omitted nothing it concerned his interest to state. If a bill of exceptions does not state correctly the matter excepted to, the judge is not bound to sign it; otherwise, he is. Here he has signed it, and we must consider it as stating all that was necessary. It is further stated in the case that the prisoner did not complain of the charge. No; the complaint is that the declarations of Mary Meadows were admitted without proof of the existence of a conspiracy, which *Page 230 
alone could legalize them; and this appears upon the face of the case. I have little doubt that much more was proved at the trial, upon this particular point than is stated in the case, but I must decide it as it is; I cannot look out of the bill of exceptions.
When the declarations were first offered they were objected to, and when the guilty connection was proved the motion to reject them was again renewed in substance. What more the prisoner could do I cannot perceive. It appears to me he did all, through his counsel, it was necessary or proper for him to do to bring his objection before the court. It surely was not necessary for him to ask for an instruction from his Honor that these acts and declarations of Mary Meadows were not evidence against him. His Honor had already decided that (327) they were. I consider the declarations and acts of Mary Meadows as given to the jury without proof of any conspiracy between her and the prisoner, and in this there was error.
In my opinion, the prisoner is entitled to a venire de novo.