STATE v. A. H. RITTER, L. E. VAUGHN, ALEX. McKENZIE AND WOOLSEY WALL.

(Filed 2 July, 1930.)

1. **Conspiracy B b—Evidence of criminal conspiracy held sufficient to sustain verdict of guilty in this case.**

Evidence in this case that one of the defendants in the presence and with the concurrence of the other, both engaged in the unlawful dealing in intoxicating liquor, offered to pay a certain sum of money for the killing of a person who had given information regarding illicit stills in that community, is held sufficient for a conviction of both for a conspiracy to kill. (See *S. c.,* 197 N. C., 113.)

2. **Same — Acts or declarations of conspirator is competent evidence against co-conspirators.**

Where two or more persons associate themselves together in a criminal conspiracy, any act or declaration made by one of them in the presence of the others in furtherance of the common object and forming a part of the *res gestæ* is competent in evidence against the others.

3. **Criminal Law D b—Criminal conspiracy is a felony under statute and Superior Court has original jurisdiction of prosecution.**

While formerly under the common law a conspiracy was a misdemeanor, is changed by statute to a felony, C. S., 4173, applying to crimes of this class, providing that in the case of an offense done in secrecy and malice where the punishment is not provided for in the statute, the punishment may be by imprisonment in the State prison, and C. S., 4171, defining crimes so punishable as felonies, and the Superior Court has original jurisdiction of a prosecution for a conspiracy to kill, and the recorder's court does not have exclusive original jurisdiction thereof, and improper venue must be met by a plea in abatement made in apt time, C. S., 4606, before plea of not guilty.

4. **Criminal Law L i—Rulings and instructions in this case held to be in accordance with opinion granting new trial and to be free from error.**

Where on appeal of a prosecution for criminal conspiracy a new trial is awarded because of error in the admission of certain evidence, upon the new trial in the Superior Court the defendant's plea of former jeopardy and motion to dismiss is properly disallowed, and where the admission of evidence and the charge of the court is in accordance with the opinion in the former appeal the defendant's exceptions thereto cannot be sustained.

5. **Criminal Law I e—Explanation to jurors why some of alleged conspirators were being tried while others were not is not prejudicial error.**

In the course of a prosecution for conspiracy an explanation to prospective jurors why some of the alleged conspirators were being tried while others were not, and proof of the fact during the trial is held not to be prejudicial error entitling the defendants to a new trial.

APPEAL by defendants A. H. Ritter and L. E. Vaughn, from *Sink, Special Judge,* at January Term, 1930, of RICHMOND. No error.

This was an indictment against the defendants for *conspiracy.* The bill charges that the defendants "on 3 July, 1927, did wrongfully, and unlawfully and wilfully and feloniously conspire and confederate to kill and murder and to cause to be killed and murdered one Cleveland Cagle, and in carrying out said conspiracy and confederation to kill and cause to be killed said Cagle did unlawfully, wilfully and feloniously offer to contract to pay to one Charlie Patterson the sum of $200, and to give said Patterson whiskey and protect him in the commission of said murder with the sheriff and other officers of Moore County, contrary to the form and statute in such cases made and provided, and against the peace and dignity of the State."

The evidence was to the effect that one Cleveland Cagle, who lived about a mile from Carthage, was active in prosecuting and stopping the manufacture and sale of intoxicating liquor in his community. The evidence on the part of the State in this regard against Ritter and Vaughn was plenary. Ritter said to Cagle, when both Vaughn and

Ritter were present: "By God, what do you have to do about it, you s— of a b—; you are breaking up all the stills and everything else," and then he went to accusing and cussing. On the last night in June, 1927, between 12 and 1 o'clock, Cagle and certain officers captured a car about eight miles from Carthage; Vaughn and Woolsey Wall were in Vaughn's car, and they captured eighteen to twenty gallons of whiskey, in a keg in the back seat of the car. "We back-tracked that car from there about a mile or a mile and a half. It was a country road, and we back-tracked that car, and just at the break of day, we tracked that car to where it had turned off that road to a fellow's house and tracked it in the woods about a quarter of a mile and in about .... miles of a big still where it had just been let out, and there must have been about 2,000 gallons of beer in there, and it was warm. We destroyed that still."

Vaughn was indicted and plead guilty of possessing and transporting liquor.

There was abundant evidence to be submitted to the jury in regard to conspiracy against both Ritter and Vaughn. Alex. McKenzie plead guilty to the bill of indictment, and his evidence alone was sufficient to be submitted to the jury, and much evidence other than his. Alex. McKenzie testified in part: "I called Charlie (Patterson) and told him some folks wanted to see him, and he came out and we all walked down to the spring. Bud (A. H.) Ritter had a coca-cola bottle of whiskey in his pocket, and Charlie (Patterson) took a drink and I took a little, and one of the others, Vaughn or Bud, took a drink. The spring is about as far from Charlie's house as from here to the street or maybe a little further. They got to talking, and Bud wanted to know of Charlie if the officers were pretty bad after a fellow for whiskey, and Charlie said, 'Yes, they are pretty bad down here,' and Bud said, 'I got a little job I would like you all to do. There is a damn son of a b— up there that is turning up everything. I'll give you and Alex $100 to go up there and knock him in the head and let an automobile run over him and knock him in the head or run the automobile over him.' 'If you don't do it for that, I will give you $200 each, and Sheriff Fry said he would give $500 on the side.' I said, 'Bud, that would not be giving a man a chance.' He said 'The damn son of a b— don't need a chance; he has had too many chances now.' They talked on about this Clay Cagle; they called him Clay or Cleve one, and said, 'We are going to come back down here tomorrow, and you all make up your minds and go with us and get him out and kill him or get him where we can get hold of him, and kill him, and we will give you all $500, and Sheriff Fry will give you all $500. Don't you boys be drinking, as we are coming back tomorrow.' Bud was doing the talking. Vaughn was there and Vaughn said, 'Don't be drinking.' "

The defendants introduced no evidence. Woolsey Wall has never been taken. The jury returned a verdict of guilty against Ritter and Vaughn. The court below rendered judgment on the verdict. The defendants excepted and assigned numerous errors and appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*W. R. Clegg, F. W. Bynum, N. McN. Smith and L. B. Clegg for Ritter and Vaughn.*

CLARKSON, J. This action was before this Court before, and a new trial granted. *S. v. Ritter and Vaughn,* 197 N. C., 113. In that opinion the law of what constitutes *conspiracy* and the kind of evidence to sustain the charge is fully set forth. The action was sent back for a new trial on the declarations of Alex. McKenzie, and it is there said at p. 116: "The declarations of Alex. McKenzie, made after he had abandoned the conspiracy, and not in furtherance of the common design, but in derogation of it, and in the absence of the other conspirators, while competent against him, yet, we think, are inadmissible as evidence against the defendants Ritter and Vaughn. *S. v. Dean, supra* (35 N. C., 63); *S. v. George, supra* (29 N. C., 321). Nor can the admission of this evidence be held for harmless error. It undoubtedly weighed heavily against defendants."

At the trial of the present action, from which this appeal was taken, the defendants introduced no testimony, and at the close of the State's evidence the defendants moved to dismiss the action. C. S., 4643. The court below overruled this motion, and in this we can see no error.

A contention of defendants: Did the Superior Court of Richmond County have jurisdiction? We think so. Conceding, but not deciding, that the recorder's court had exclusive original jurisdiction of all crimes below the grade of felony within twelve months after the commission of the offense, and this offense was committed within the twelve months, yet we think the *crime of conspiracy,* now a *felony* and not a *misdemeanor.* The crime of conspiracy at common law was a misdemeanor. *S. v. Jackson,* 82 N. C., 565. We think this has been changed by statute.

C. S., 4171: "A felony is a crime which is or may be punishable by either death or imprisonment in the State's prison. Any other crime is a misdemeanor."

C. S., 4172: "Every person who shall be convicted of any felony for which no specific punishment is prescribed by statute shall be imprisoned in the county jail or State prison not exceeding two years, or be fined, in the discretion of the court, or if the offense be infamous, the

STATE *v.* RITTER.

person offending shall be imprisoned in the county jail or State prison not less than four months, nor more than ten years, or be fined."

C. S., 4173: "All misdemeanors, where a specific punishment is not prescribed shall be punished as misdemeanors at common law; but if the offense be infamous, or done in secrecy and malice, or with deceit and intent to defraud, the offender shall be punished by imprisonment in the county jail or *State prison* for not less than four months nor more than ten years, or shall be fined."

Public Laws of N. C., 1927, ch. 1, C. S., 4173, was amended "by inserting after the word 'jail' before the word 'for' in line 5 of said section the following words, 'or State prison.' "

Interpreting, then, this addition to section 4173, in connection with section 4171, it makes the particular offense in the instant case, having been done in secrecy and malice, distinctly a felony. That section is not defining offenses, but providing punishment for them and it, therefore, sets aside, as the necessary effect of the amendment, the offenses in the latter clause as felonies, to be punished by imprisonment in the State's prison. Consequently, properly interpreted, this amendment of 1927 creates a conspiracy formed in secrecy and in malice, a felony, which, using the words in section 4171, may be punishable by imprisonment in the State's prison.

Under C. S., 4606, improper venue must be met by plea in abatement. The defendant's plea in abatement was made in the lower court for the first time when this case came on for trial after a new trial was granted Ritter and Vaughn, therefore it was not made in apt time. A plea in abatement is too late after a plea of not guilty. *S. v. Oliver,* 186 N. C., 329; *S. v. Hooker,* 186 N. C., 761; *S. v. Mitchem,* 188 N. C., 608.

Another contention of defendants: Are the exceptions and assignments of error of the defendants to the evidence offered over their objection well taken? We think not.

The principle of law in reference to this evidence is thus stated in 12 C. J., p. 634, part sec. 227(3), under *Conspiracy:* "In the reception of circumstantial evidence, great latitude must be allowed. The jury should have before them and are entitled to consider every fact which has a bearing on and a tendency to prove the ultimate fact in issue, and which will enable them to come to a satisfactory conclusion."

Wharton's Criminal Evidence (10 ed.), p. 1672: "We may be satisfied from circumstances attending a series of criminal acts that they result from concerted and associated action, although if each circumstance was considered separately it might not show confederation, but, where linked together circumstances that in themselves are inclusive, yet taken as a whole, may show that apparently isolated acts spring from a common object and have in view the promotion of a common purpose." *S. v. Anderson,* 92 N. C., 732; see *S. v. Brady,* 107 N. C., 822.

In 4 Elliott on Evidence, p. 203, part sec. 2939, the principle is thus stated: "It is perhaps the universal rule that any act done, or any declaration made, by any one of the conspirators in the furtherance or perpetrations of the alleged conspiracy may be given in evidence against himself or his coconspirators. This rule has been more aptly stated as follows: 'The law undoubtedly is, that where two or more persons combine or associate together for the prosecution of some fraudulent or illegal purpose, any act or declaration made by one of them in furtherance of the common object, and forming a part of the *res gestæ,* may be given in evidence against the other.'" *S. v. Anderson,* 92 N. C., 732; *Saunders v. Gilbert,* 156 N. C., 463; *S. v. Davis,* 177 N. C., 573; *S. v. Connor,* 179 N. C., 752; *S. v. Stewart,* 189 N. C., 340; *S. v. Ritter et al., supra.*

The defendants made several other contentions: "Should the defendants' plea of former jeopardy and motion to dismiss in conformity with the opinion of the Supreme Court on file in this cause have been allowed?" We think not. "Is it either necessary or proper to explain to prospective jurors why one man is being tried and another is not, or to prove this fact in the trial of a cause?" We see no prejudicial error from what was done. "Is the opinion of the Supreme Court excluding evidence on an appeal binding on the court below when a new trial is being had?" We think the court below followed the former opinion in trying the action. "Should the exceptions to the charge of the court be sustained?" We think not. On the whole, the charge of the court below set forth the law, and applied the law applicable to the facts.

From a careful reading of the charge by the court below, we think it fair to the defendants. It defined what was conspiracy, and charged: "If from all the evidence you shall find, beyond a reasonable doubt that Ritter and Vaughn, between themselves, agreed to kill or to procure another to kill the witness, Cagle, or if they, along with Alex McKenzie and Wall, or any one else, agreed to kill or have killed the witness, Cagle, and that they so conspired and agreed among themselves with the intention to destroy or have destroyed the witness, Cagle, and you shall be so satisfied, beyond a reasonable doubt, it would be your duty to find the defendants guilty. If, on the other hand, upon an examination of all the testimony you shall fail to be so satisfied, or shall accept the defendants' contentions that there was no conspiracy, that there was no act on their part from which you can infer conspiracy, or from all the evidence that there was none, then it would be your duty to return a verdict of not guilty. . . . The defendants have not gone upon the witness stand, which is their privilege. Under the laws of the State of North Carolina, a defendant may or may not go on the witness stand, and the fact that he does not go upon the witness stand shall not be con-

sidered by the jury against him, and the fact that a defendant does, or does not go on the stand, must not be considered against him. The defendants are presumed to be innocent, and that presumption follows them throughout the trial. . . . The defendants say (speaking of the State's witnesses) they are not worthy of belief; that, they were all drinking and were not capable of understanding the nature of their acts and conduct; that, the witnesses, Patterson and McKenzie, are interested parties, and that, McKenzie is particularly interested, and that you should scrutinize his testimony and analyze it. . . . The defendants contend to the contrary, that they were there for a lawful purpose, and while drunk, that there was no conspiracy to murder; that, it was unnatural and unreal, and that, if they had desired to destroy or have destroyed the witness Cagle, they would not have sought out a strange negro and a white man they were not well acquainted with, at least, with whom one was not well acquainted, and that you should fail to find, beyond a reasonable doubt that the defendants are guilty, and that you should acquit them."

The facts were for the jury to determine. The contentions given by the court below on both sides and the charge of the court below was fair, and we can see no error in law to give a new trial. We may state that two juries, twenty-four men free from bias, have found the defendants guilty.

We are indebted in the preparation of this opinion to the most excellent brief of the Attorney-General and Assistant Attorney-General. In law we can find

No error.