STATE v. MRS. M. M. EVERHARDT.

(Filed 30 November, 1932.)

1. **Indictment B b—Indictment is sufficient if it charges all elements of the crime in a plain, explicit manner.**

   An indictment is sufficient if it charges in appropriate terms all the necessary elements of the offense in a plain, intelligible and explicit manner. C. S., 4623.

2. **Nuisances B d—Indictment for public nuisance need not specifically set out profane language alleged to have been used on premises.**

   An indictment for the maintenance of a public nuisance charging that the defendant permitted a large number of people to assemble at a dwelling under her control and there to drink, holler, and use all kinds of vulgar, loud and profane language, etc., to such an extent as to be a common nuisance to the general community it is not demurrable on the ground that the objectionable language alleged to have been used by the occupants of the house was not specifically set out.

3. **Indictment D d—Bill of particulars may be requested where indictment charges elements of crime but more particularity is desired.**

   Where the criminal indictment sufficiently charges all the elements of the offense but is not as definite as the defendant may desire the defendant's remedy is by a motion for a bill of particulars, which is addressed to the sound discretion of the trial court, C. S., 4613, and not by a motion to quash, but a bill of particulars cannot supply the failure of the bill of indictment to sufficiently charge a necessary element of the offense.

4. **Courts A a—Concurrent jurisdiction of Superior courts with county courts was re-established by C. S., 1437.**

   Exception to the jurisdiction of the Superior Court to try an indictment charging the maintenance of a public nuisance on the ground that the county court had exclusive original jurisdiction of the offense is not tenable, since the provisions of C. S., 1437, takes from the inferior courts the exclusive jurisdiction and provides that the jurisdiction shall be concurrent and exercised by the court first taking cognizance thereof, except for certain enumerated counties exempt from its provisions.

5. **Criminal Law I j—Only evidence favorable to State is considered on motion of nonsuit.**

   Upon a motion as of nonsuit in a criminal action only the evidence favorable to the State will be considered.

6. **Nuisances B a—Instruction as to distinction between public and private nuisance held correct.**

   A public nuisance is one which affects the local community generally and a private nuisance is one which affects the separate rights of individuals, and in this prosecution for the maintenance of a public nuisance upon evidence that the defendant kept a public place where a large number of people were allowed to congregate at night and to drink, fight

and use loud and profane language to the great annoyance of those living in the neighborhood and those passing upon a nearby public highway, the instruction of the court defining the difference between a public and private nuisance is held correct.

**7. Criminal Law O a—Person aiding and abetting in maintenance of nuisance is guilty as principal.**

One who aids and abets in the maintenance of a public nuisance is guilty of the offense, and where the lessee of a dwelling maintains and runs it in such a way as to make it a public nuisance the lessor is also liable to the charge if she aids and abets therein, the burden of proving the necessary elements beyond a reasonable doubt being upon the State.

APPEAL by defendant from *Schenck, J.,* and a jury, at May Term, 1932, of ROWAN. No error.

The defendant was indicted and convicted under the following bill of indictment:

"The jurors for the State upon their oath present, that Mrs. M. M. Everhardt, late of the county of Rowan, on 1 December, in the year of our Lord one thousand nine hundred and thirty-one, with force and arms, at and on various other times, both before and since the taking of this inquisition, and in the county aforesaid, unlawfully, wilfully did create, maintain, permit and allow a common nuisance at and in a certain building then and there owned and controlled by her, said building being situate on State Highway No. 15, in North Carolina and in Rowan County, and near the town of Landis, in State and county aforesaid, by causing, allowing and permitting great concourse and promiscuous crowds of people, men and women, to congregate and assemble in said building, and then and there, in the presence, and in the hearing of divers other good citizens there living and assembled, and in the presence and in the hearing of divers other good citizens then and there passing and repassing, in the night-time, and into the late and unreasonable hours of the night-time, the said crowd of promiscuous people would assemble and congregate, and there riotously and boisterously dance, sing, holler, and use all kinds of vulgar, loud and profane language when and while many of the said crowd so congregated and assembled in the aforesaid building then and there belonging to and controlled by the said Mrs. M. M. Everhardt, would be highly intoxicated, hilarious, rowdy and drunk, and the said unlawful conduct then and there continued for 15 minutes and more at the time and for many hours at the time and all such conduct would continue for hours at the time in the presence of and in the hearing of divers good citizens living near to the said building and in the hearing of good citizens then and there passing and repassing, all to the great disturb-

ance and annoyances and to the common nuisance of the said good citizens then and there being and passing and repassing, against the form of the statute in such case made and provided, and against the peace and dignity of the State.        ZEB. V. LONG, *Solicitor.*"

The evidence on the part of the State was to the effect that about 15 or 20 yards from State Highway No. 15, between the towns of China Grove and Landis, defendant operated a "Dance Hall" most every night. On several occasions Mrs. Everhardt "had charge of the dances; she collected the fees at the door." On another occasion "there was a young man selling the tickets, but Mrs. Everhardt was taking the money over." Five or six families live in the immediate neighborhood. At times there was noisy and boisterous conduct of those present in regard to drinking, immorality, cursing, scrapping, etc. The cursing was so loud as to be heard on the highway. On several occasions women were seen to "go on the outside just outside and just back of the dance hall and expose themselves in the presence of men"; also as to cursing "this was loud enough to be heard by those passing upon the highway, there have been times it could be heard probably a quarter of a mile. Prior to 1 December the dances were held twice a week, in the night-time, since that time they have been once a week—Saturday nights."

The testimony of one of the witnesses as to the conduct of the "overflow" on his premises is unmentionable. He also said, in part: "Yes, sir, the noises I heard were very loud; they could be easily understood in my study, two or three blocks off, if it was blocked off. It was more the nature of cursing, swearing, loud, boisterous noise in general that disturbed me.   .   .   .   Yes, sir. The general reputation of this house in the community is bad."

D. C. Pethel, testified, in part: "I have observed the conduct at the place. I have been down there on a few occasions and I would see parties come out of the dance hall; they would hardly get out of the light until they would begin to drink, get out their bottles. It was a few feet off the highway when I saw that. People on the highway could observe these things if they had been walking or going real slow, if looking over that way. Just to the rear of the dance hall, I would say not over 10 or 12 feet from the back end of the dance hall, I have seen immoral conduct. Also, I have heard profane language used in front of the dance hall. It was loud enough to be heard by persons upon the highway. I have seen immoral conduct by the side of the highway, just this side of it, 10 or 12 feet from the hard surface."

J. P. Linn testified, in part: "That he lives at Landis, is a business man. I stopped at the dance hall one night. The dance was going on.

It was possibly 11 o'clock. We parked in about 20 steps of the door, off the highway. I didn't see any misconduct while I was there, but just between dances quite a crowd came out of the door and they called on a fellow by the name of Buffalo. One fellow said 'Buffalo, bring me a pint'; another fellow said 'Buffalo, bring me one.' The other fellow took the order for five pints. He went off in his car and came back in three to five minutes and went around the building and the crowd rushed around. I know the general reputation of this place in the community of Landis; it is bad. The place is about two blocks from the outside of the corporate limits of Landis. The population of Landis is 1,500; 500 school children."

J. R. Beaver, police officer at Landis, testified, in part: "I have seen drunks on the outside there about every night they have had a dance. I have seen girls expose themselves before men back of the dance hall. I have seen drunks on the highway and outside of the dance hall; men drunk, and I have seen girls drunk. I have seen fights. I have heard cursing. The majority of the cursing and drinking and drunks has been from on the highway to 10 or 15 feet back. The crowd stays in front of the dance hall. It aint over thirty feet from the hard surface to the dance hall door."

It was in evidence that one Brown was shot by one Wyche there. People came to the dances from Albemarle, Taylorsville, Kannapolis, High Point, Salisbury and other places.

There was other evidence of like tenor. The sheriff of Rowan testified: "I know the general reputation in the community of this dance hall; it is bad." The police officer of China Grove testified, in part: "I am familiar with the general reputation of this house in the community. The general reputation, the people I hear talk about it, claim it is a *mighty bad place.*" There was other evidence as to the general reputation of the place being bad.

Defendant, on the other hand, denied her guilt and proved by several witnesses her good character. It was in evidence that the premises were lighted up, 25 or 30 lights in the grove, about 30 lights in the filling station. A part of the time complained of the "Dance Hall" was rented to and run by one Murphy, Z. S. Carson, Bud Goodman, C. E. Jordan and Z. V. Widenhouse. There was evidence in denial of the State's evidence. There was evidence on the part of defendant that "Jordan, Widenhouse and Mrs. Everhardt had charge."

The jury brought in a verdict of "guilty," with recommendation for mercy. Judgment: "The judgment of the court is that the defendant pay a fine of $50.00 and the costs of this action." The defendant made

numerous exceptions and assignments of error and appealed to the Supreme Court. The material exceptions and assignments of error will be considered in the opinion.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*
*R. Lee Wright for defendant.*

CLARKSON, J. In apt time and before pleading to the bill of indictment and before the jury was empaneled, the defendant made a motion (1) to quash the bill of indictment; (2) plea in abatement and to jurisdiction. *S. v. Oliver,* 186 N. C., 329; *S. v. Mitchem,* 188 N. C., 608; *S. v. Ritter,* 199 N. C., 116; *S. v. Ellis,* 200 N. C., 77.

One of the material contentions of the defendant is that the bill of indictment is defective "for the reason that the law requires the bill of indictment to set out in detail the profanity charged to have been used, the words, the acts, the conduct and the matters and things which the State contends constituted a nuisance."

C. S., 4613, is as follows: "In all indictments when further information not required to be set out therein is desirable for the better defense of the accused, the court, upon motion, may, in its discretion, require the solicitor to furnish a bill of particulars of such matters."

C. S., 4623: "Every criminal proceeding by warrant, indictment, information, or impeachment is sufficient in form for all intents and purposes if it express the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment."

In *S. v. Beal,* 199 N. C., at p. 294, is the following: "The office of a bill of particulars is to advise the court, and more particularly the accused, of the specific occurrences intended to be investigated on the trial, and to regulate the course of the evidence by limiting it to the matters and things stated therein. C. S., 4613; *McDonald v. People,* 126 Ill., 150, 31 C. J., 752. The demurrer to the bill on the grounds of duplicity and indefiniteness, was likewise properly overruled. *S. v. Knotts,* 168 N. C., 173, 83 S. E., 972. C. S., 4623, provides against quashal for informality if the charge be plain, intelligible and explicit, and sufficient matter appear in the bill to enable the court to proceed to judgment. *S. v. Haney,* 19 N. C., 390." *S. v. Wadford,* 194 N. C., 336.

A bill of particulars will not supply any matter required to be charged in the indictment, *as an ingredient of the offense, S. v. Long,* 143 N. C., 670.

The whole object of a bill of particulars is to enable the defendant to properly prepare his defense in cases where the bill of indictment, though correct in form and sufficient to apprise the defendant, in general terms, of the "accusation" against him, is yet so indefinite in its statements, as to the particular charge or occurrence referred to, that it does not afford defendant a fair opportunity to procure his witnesses or prepare his defense. *S. v. R. R.,* 149 N. C., 508.

As far back as *S. v. Moses,* 13 N. C., at p. 464, *Ruffin, C. J.,* speaking to this subject says: "This law was certainly designed to uphold the execution of public justice by freeing the courts from those fetters of forms, technicality and refinement which do not concern the substance of the charge and the proof to support it. Many of the sages of the law had before called nice objections, of this sort, a disease of the law and a reproach to the Bench, and lamented that they were bound down to strict and precise precedents," etc. *S. v. Caylor,* 178 N. C., at p. 809.

The current is all one way, sweeping away by degrees "informalities and refinements," until a plain, intelligible and explicit charge is all that is now required to any criminal proceeding. The indictment is sufficient if it includes, in appropriate charging terms, the essential elements of the offense. "A disorderly house is a house kept in such a way as to disturb, annoy, or scandalize the public generally, or the inhabitants of a particular vicinity, or the passers in a particular highway, and is indictable at common law. . . . A house kept for promiscuous and noisy tippling, promoting drunkenness in a community; or when unlawful sales are made to all parties applying" is a disorderly house and a public nuisance, even though the riots and disorder is not heard beyond the walls of the building. Wharton Crim. Law (11th ed.), sec. 1720. *S. v. Black,* 94 N. C., 810.

In the *Black case, supra,* a kindred common law offense of nuisance, but a gaming house where poker was played for money, and Black acted as banker, selling chips, etc. It was said in that case, at pp. 812-13: "One might turn his dwelling-house his sleeping chamber, his office, building, or business house, into a gambling house, by inducing or allowing persons to resort thither, from time to time, for gaming purposes."

*S. v. Cainan,* 94 N. C., 880, is a warrant under a city ordinance, it is there said (at p. 882): "Nor was it necessary to set forth in the warrant, the exact words used by the defendant. If he boisterously cursed and swore, no matter what were the precise words used, he was guilty. The words 'boisterous cursing and swearing' have such distinc-

tive signification, as necessarily implied a violation of the ordinance, and gave the defendant to understand with sufficient certainty, how he had violated it. The charge was simple and easily understood, without nice precision in making it. The court could see that an offense was charged, and the defendant had sufficient notice and information to enable him to make his defense."

In *S. v. Barham*, 79 N. C., at p. 647, where a common law nuisance is charged against the individual: "It is necessary to set out the profane words in order that the court may decide as to their quality."

In *S. v. Toole*, 106 N. C., at p. 738: "The use of the vulgar stanza set out, if uttered as part of a longer song of similar tenor, extending over a period of ten minutes along a public street, would be a nuisance, even though the identical words set out may not have been repeated. If this were not so, the perpetrators of such conduct could not be punished, unless the hearers are quick enough of ear to catch, and tenacious of memory to retain, the whole of a vile song which disgusts them, and not even then, unless there was repetition. The nuisance complained of, in effect, is the loud and boisterous singing for ten minutes of an obscene song, containing the stanza charged, on a public street, in the hearing of divers persons then and there present. This, though done only on a *single occasion,* may be a nuisance. *S. v. Chrisp,* 85 N. C., 528." In the *Chrisp case, supra,* the language was profane on a single occasion, but for a period of five minutes, and in the *Toole case, supra,* it was vulgar and obscene.

It will be noted that vulgar and obscene language was set forth in the indictment in the *Barham* and *Toole cases, supra. These were indictments against the individuals for their use of profane, vulgar and obscene language for a certain period of time.* The present indictment is a common-law offense, where defendant is charged with a nuisance, keeping a disorderly house like in *Black's case, supra,* keeping a gambling house. See *S. v. Burke,* 199 N. C., 458; *S. v. Cole,* 202 N. C., 592.

We think the motion to quash and plea in abatement to the bill of indictment cannot be sustained, for the reasons above set forth. A bill of particulars was permissible in the discretion of the court below. *Power Co. v. Elizabeth City,* 188 N. C., at p. 285-6. The plea to the jurisdiction cannot be sustained. If it be admitted that the jurisdiction of the recorder's or county court of Rowan County is exclusive by operation of chapter 386, Public Laws, 1909 (which, however, is not the case), the evidence is quite sufficient to cover a period of time prior to the finding of the indictment, and outside of the one year period prescribed by the statute during which the jurisdiction of the county court is made exclusive.

Subsection 3, chapter 386, of the above act, provides: "Nothing in this act shall prevent the Superior Court of Rowan County from assuming jurisdiction of all offenses whereof exclusive original jurisdiction is given the said Rowan County Court, if within twelve months after the commission of the offense said Rowan County Court shall not have proceeded to take official cognizance of the same." However, the Public-Local Law, under which the county court of Rowan has jurisdiction, is repealed, so far as the exclusiveness of its jurisdiction is concerned in cases of this sort, by the 1923 act, which is found in C. S., 1437, as follows: "In all cases in which by any statute original jurisdiction of criminal actions has been taken from the Superior Court and vested exclusively in courts of inferior jurisdiction, such exclusive jurisdiction is hereby divested, and jurisdiction of such actions shall be concurrent and exercised by the court first taking cognizance thereof. Appeals shall be, as heretofore, to the Superior Court from all judgments of such inferior courts: Provided that this section shall not apply to the counties of Cabarrus, Forsyth, Gaston, Mecklenburg, Surry and Union." See *Jones v. Oil Co.,* 202 N. C., 328; *Hendrix v. R. R.,* 202 N. C., 579; *Lewellyn v. Lewellyn, ante,* 575.

At the close of the State's evidence and at the close of all the evidence, the defendant made motions to dismiss the actions or for judgment of nonsuit. C. S., 4643. The evidence favorable to the State alone is considered, defendant's evidence is discarded. *S. v. Lawrence,* 196 N. C., at p. 564. The court below overruled the motions and in this we can see no error.

In 20 R. C. L. (Nuisances), part sec. 7, p. 384, we find: "A public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights. Such nuisances always arise out of unlawful acts. According to Blackstone (4 Com., 166) 'common or public nuisances are offenses against the public order or economical regimen of the State, being either the doing of a thing to the annoyance of the king's subjects or the neglecting to do a thing which the common good requires! . . . The difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing itself. It is public because of the danger to the public. It is private only because the individual as distinguished from the public has been or may be injured. Public nuisances are indictable. Private nuisances are actionable, either for their abatement or for damages, or both. . . . (p. 385, sec. 8). In a general way, the courts frequently say that the injury from a nuisance, in order to constitute the nuisance a public one, must affect 'the public.' But it is admittedly a difficult question to tell whether a

nuisance is so general in its character—that is, affects a sufficient number of persons—to justify its characterization as a 'public nuisance.' Of course in one sense, the public is everybody; but manifestly that is not the sense in which the word is used in the law relating to nuisances. No doubt a nuisance is public if it affects the entire community or neighborhood, or any considerable number of persons. Furthermore, it undoubtedly is true that a nuisance is a public one if it occurs in a public place, or where the public frequently congregate, or where numbers of the public are likely to come within the range of its influence; and it seems to be sufficient to constitute acts or conditions a public nuisance, if injury and annoyance are occasioned to such part of the public as come in contact therewith."

In Clark's Criminal Law (2d ed.), Hornbook Series, part sec. 115, at p. 345, we find: "To constitute a public nuisance, the condition of things must be such as injuriously affects the community at large, and not merely one or even a very few individuals. . . . (p. 346.) Whatever tends to endanger life, or generate disease, and affect the health of the community; whatever shocks the public morals and sense of decency; whatever shocks the religious feelings of the community, or tends to its discomfort—is generally, at common law, a public nuisance, and a crime. . . . (p. 348.) Disorderly houses, including houses of ill fame and drinking or tippling houses, kept in such a way as to annoy and scandalize the public, are nuisances at common law."

In *S. v. Wilson*, 93 N. C., at p. 609, speaking to the subject: "A disorderly house is defined by Mr. Wharton, as one 'kept in such a way as to disturb, annoy or scandalize the public generally, or the inhabitants of a particular vicinity, or the passers by in the particular highway.' 2 Whar. Cr. Law, sec. 2392. . . . The instruction asked for defendant, that all the evidence adduced did not establish the character of the house as disorderly within the meaning of the law, nor prove the offense imputed to the accused, was properly refused, and the substituted instruction 'that if the defendant permitted disorderly conduct, lewd behavior, shooting and other loud noises to be carried on at his house, and these acts disturbed the neighborhood and the passers by, the defendant would be guilty,' was unexceptionable and appropriate."

In *S. v. Robertson*, 86 N. C., at p. 631: "For when the illegal character of the house is established by sufficient proof it becomes indictable for the reason that no one has a right to keep a disorderly house when people passing may be disturbed and some are disturbed." These cases are distinguishable from *S. v. Calley,* 104 N. C., 858.

The defendant requested many special prayers for instructions. Applying the law, as above set forth, applicable to the facts of this case

we think the special prayers that were correct were substantially given in the charge of the court below.

The defendant excepted and assigned errors to the following portions of the charge below: "The court charges you that a common nuisance is an offense against the public order and economy of the State, by unlawfully doing any act or by omitting to perform any duty, which the common good, public decency or morals, or the public right to life, health and the use of property requires, and which at the same time annoys, injures, endangers, renders insecure, interferes with or distracts the rights or property of the whole community or neighborhood, or any considerable number of persons. . . . A nuisance is not a public nuisance though it may injure a great many persons, if the injury is only to the individual property of each. Common nuisances are such inconveniences or troublesome offenses as annoy the whole community in general and not merely some particular person. So, gentlemen, you will immediately see that your inquiry is whether this defendant committed offenses or maintained such a place as would annoy the community in which the place was maintained or the neighborhood in which it was maintained; that is, annoyed such community or neighborhood in general and not annoyed some particular person here and there. If it only annoyed one person or two persons or in any way interfered with their happiness or destroyed the value of their property, that would be a private nuisance and they would have a redress by way of a civil action against the party, possibly by way of a restraining order; but we are trying this defendant in a criminal court, wherein she is charged with criminal offense of maintaining a nuisance and in order to constitute the criminal offense or common law nuisance there must be a disturbance to the whole community in general or the neighborhood in general and not disturbance to a person in his individual rights here and there." This exception and assignment of error cannot be sustained from the law before quoted bearing on the subject.

The defendant also excepted and assigned errors to the following portion of the charge below, which we cannot sustain: "If you find, and find beyond a reasonable doubt, that any time within two years prior to the finding of the bill of indictment she aided and abetted, that is, assisted and encouraged some one else in maintaining a common law nuisance, as that term has been defined to you, you would likewise return a verdict of guilty. . . . Now there is further evidence tending to show, gentlemen, that this defendant at that time had no control over the property at all, that she was simply the lessor, the owner of the property, and that these other persons were the lessees and the operators of the dance hall. Now, gentlemen of the jury, if she had no control

whatsoever over the operation of the dance hall, nothing else appearing, and even if the dance hall was operated in such a way as to constitute a nuisance, you could not return a verdict of guilty against her. However, if you find, and find beyond a reasonable doubt, that the hall at those times when rented by some one else was operated in such a way as to constitute a common nuisance, and further find beyond a reasonable doubt that during these times she aided and abetted, that is, assisted and encouraged her lessee, the person in charge, in operating it in a way as to constitute a nuisance, then, gentlemen of the jury, it would be your duty to return a verdict of guilty. But, before she can be convicted, gentlemen of the jury, by way of being an aider and abettor, it first must be established beyond a reasonable doubt by the State that the property was operated in a way so as to constitute a common nuisance, and, further, it must be so established beyond a reasonable doubt that this defendant aided and abetted, that is, assisted and encouraged, such operator in operating it in such a way as to constitute a common law nuisance."

In 46 C. J., at p. 744, it is said: "One who aids in maintaining a public nuisance is guilty of the offense."

We think there is no error in the charge as to aider and abettor. *S. v. Jarrell,* 141 N. C., 725; *S. v. Cloninger,* 149 N. C., at p. 572; *S. v. Baldwin,* 193 N. C., 566; *S. v. Lambert,* 196 N. C., 524; *S. v. Beal,* 199 N. C., 278; *S. v. Hoffman,* 199 N. C., 328.

We think the charge is full, plenary, explicit and does not impinge on C. S., 564. The jury passed on the facts, and, according to the State's evidence, was merciful—no doubt on account of the fact that others were also involved who go unpunished—the judge in the sentence was merciful. In law we find no error on the record.

No error.