STATE v. ERNIE ANDREWS.

(Filed 13 December, 1939.)

**1. Criminal Law § 52b—**

Upon motion to nonsuit, the evidence must be considered in the light most favorable to the State, and if there is any substantial evidence to support the charge contained in the bill of indictment the motion is properly denied.

**2. Conspiracy § 3—**

A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful thing in an unlawful way or by unlawful means, and the illegal agreement being the crime, the failure of one of the conspirators to participate personally in the overt act is immaterial upon the question of his guilt of conspiracy.

**3. Conspiracy § 6—**

A criminal conspiracy need not be proven by direct testimony but may be established by proof of facts and circumstances from which it may be legitimately inferred.

**4. Same: Criminal Law § 52a—Evidence held sufficient for jury in this prosecution for criminal conspiracy.**

Evidence that the appealing defendant, the perpetrators of the crime, and all the other defendants were well acquainted, that the property stolen was transported in appealing defendant's car, and that appealing defendant in company with several of the other defendants had several times prior to the larceny visited and investigated the building from which the goods were stolen, with evidence of other incriminating circumstances, *is held* sufficient to be submitted to the jury upon the question of appealing defendant's guilt of criminal conspiracy, notwithstanding other testimony tending to exculpate him, the credibility of the evidence and the inferences properly to be drawn from the facts in evidence, being for the jury.

APPEAL by defendant Andrews from *Bobbitt, J.,* at June Term, 1939, of RANDOLPH. No error.

The defendant Ernie Andrews was indicted with Thurman King and Wiley Haithcock for conspiracy by and between themselves, and with Ernest Curl, McBee Moore, and Cal Ferguson, to break and enter the house of one Wiley Spencer, with intent to steal therefrom. The three last named pleaded guilty to the charge of larceny, and testified for the State. There was verdict of guilty of conspiracy as charged against the three first named, and from judgment imposing sentence defendant Andrews appealed.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*John J. Henderson and Cooper A. Hall for defendant.*

DEVIN, J. The validity of the trial and conviction of the appealing defendant is assailed chiefly on the ground that the evidence was not sufficient to warrant its submission to the jury, and that his motion for judgment as of nonsuit should have been allowed.

Under the established rule to be applied to the consideration of this motion, the evidence must be viewed in the light most favorable to the State, and if there was any substantial evidence to support the charge contained in the bill of indictment, the ruling of the court below must be upheld. *S. v. Anderson,* 208 N. C., 771, 182 S. E., 643; *S. v. Rountree,* 181 N. C., 535, 106 S. E., 669.

The evidence for the State tended to show that property, consisting of 76 cases of whiskey valued at $1,400, was stolen on the night of

5 January, 1939, from the building of Spencer in Randolph County; that the defendants King and Haithcock, together with Curl, Moore, and Ferguson, actively participated in the larceny; that they traveled to the scene in two automobiles belonging to defendant Andrews, and the stolen property was transported in these automobiles to the place of defendant Andrews, who has a cafe and service station or garage near Graham in Alamance County. Andrews was not personally present but was in the State of Virginia at the time.

The witness Moore testified that two weeks before, at the request of Andrews, he went with Andrews in the latter's automobile to Spencer's place; that defendant King was there also; that King knocked on the door, came back and told Andrews that there was a lady there. Andrews and the witness then returned to Graham. This witness further testified that a week later he went with Andrews and Haithcock again to Spencer's place in Andrews' automobile. King and another man also came "in a black Ford." Andrews drove his car by the side of Spencer's house. Something was said about a light over the back window. Haithcock got out and went to the back door and reported the door was locked. "Andrews told him not to fool with it," and they drove back to Graham. This witness also testified that on this occasion "Mr. Andrews parked the car, and a fellow driving a Ford said he wasn't going to let the car stay there because they would know of you. He was talking to Mr. Andrews."

The witness Curl testified that after he was arrested and put in jail he saw defendant Andrews, a week later. "I sent him a telegram to bring me some clothes. When he came he wanted to know where the liquor was that King and I put away." There was also evidence that Andrews visited witness Moore in jail, gave him a small amount of money, and told him not to say anything about his being "up there at Spencer's." The participants in the larceny of the property had known defendant Andrews for a number of years. Several of them previously had been employed by him, and Curl, who drove one of the automobiles used in transporting the stolen property to Graham, was sleeping at Andrews' place.

In *S. v. Whiteside,* 204 N. C., 710, 169 S. E., 711, a criminal conspiracy was defined as follows: "A conspiracy is the unlawful concurrence of two or more persons in a wicked scheme—the combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way or by unlawful means. *S. v. Ritter,* 197 N. C., 113, 147 S. E., 733. Indeed, the conspiracy is the crime and not its execution. *S. v. Wrenn,* 198 N. C., 260, 151 S. E., 261." "As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is complete." *S. v. Knotts,* 168 N. C., 173, 83 S. E., 972.

The fact that the appealing defendant did not personally participate in the overt act is not material if it be established by competent evidence that he entered into an unlawful confederation for the criminal purpose alleged. The existence of the unlawful agreement need not be proven by direct testimony. It may be inferred from other facts, and the conditions and circumstances surrounding. 11 Am. Jur., 548, 570. "The results accomplished, the divergence of those results from the course which would ordinarily be expected, the situation of the parties and their antecedent relations to each other, together with the surrounding circumstances, and the inferences legitimately deducible therefrom, furnish, in the absence of direct proof, and often in the teeth of positive testimony to the contrary, ample ground for concluding that a conspiracy exists." *S. v. Whiteside, supra; S. v. Anderson,* 208 N. C., 771 (787); *S. v. Shipman,* 202 N. C., 518, 163 S. E., 657; *S. v. Ritter,* 199 N. C., 116, 154 S. E., 62.

While in the instant case some of the testimony of the State's witnesses, elicited on cross-examination, tended to exculpate the appealing defendant, upon consideration of the whole case we think the evidence sufficient to require its submission to the jury. The credibility of the witnesses, and the inferences properly to be drawn from the facts in evidence, were matters within the province of the jury.

The appellant's assignments of error, based upon the rulings of the court below in the admission of testimony, we find without substantial merit. *S. v. Ritter,* 199 N. C., 116, 154 S. E., 62; *S. v. Batts,* 210 N. C., 659, 188 S. E., 99. Nor can the exceptions to the judge's charge be sustained.

We reach the conclusion that in the trial there was

No error.