HOME REAL ESTATE LOAN & INSURANCE COMPANY AND W. F. SHAFFNER, v. C. B. PARMELE.

(Filed 22 June, 1938.)

**1. Waters and Water Courses § 13—**

The common law rule that streams are navigable only as far as tide-water does not obtain in this State, our rule being that waters are navigable if they are, or may be, used for commerce of substantial and permanent character.

**2. Same—**

Waters covering marsh lands at high tide so that boats drawing up to 20 inches may navigate same, but receding at low tide below the land, are not navigable waters.

**3. State § 4a: Waters and Water Courses § 15a—**

Title to tide-lands is in the State.

**4. Same—**

Marsh lands of more than 2,000 acres are not subject to entry and grant. C. S., 7540 (3).

**5. State § 4a:  Waters and Water Courses § 15a—State Board of Education is vested with title to State lands.**

The State Board of Education, as successor to all powers and trusts of the president and directors of the Literary· Fund of North Carolina, N. C. Constitution, Art. IX, sec. 10, is vested with title to all public lands, including marsh lands, owned by said Fund at the time of the adoption of the said provision of the Constitution.

**6. State § 4b:  Waters and Water Courses § 15a—**

The State Board of Education may sell and convey the fee in marsh lands which comprise one tract of marsh lands of more than 2,000 acres. C. S., 7621.

**7. Same—**

The fact that marsh lands conveyed by the State Board of Education are thereafter filled in and reclaimed by the purchaser does not divest the title of the purchaser, C. S., 7540 (2), since the conveyance is of the fee and not an easement in the lands.

**8. Same—**

The deed of the State Board of Education to the marsh lands in question *is held* good as against the State.  Whether the purchaser's title is good as against the United States upon reclamation of the land in the construction of an inland waterway, C. S., 7583, is not decided.

APPEAL by defendant from *Cranmer, J.,* at March Term, 1938, of NEW HANOVER.  Affirmed.

This is a controversy without action involving title to marsh lands conveyed by the State Board of Education to the plaintiffs submitted under C. S., section 626.

The agreed facts upon which the controversy hinges are as follows:

"1. That the plaintiff, Home Real Estate Loan & Insurance Company, is a corporation, duly created, organized and existing under and by virtue of the laws of North Carolina, with its principal place of business in the city of Winston-Salem, county of Forsyth, in said State; that the plaintiff, W. F. Shaffner, is a resident of the county of Forsyth, in the State of North Carolina, and that the defendant is a resident of the county of New Hanover, in the State of North Carolina.

"2. That by deed dated August 4, 1930, and recorded August 7, 1930, in Book 215, at page 511, in the office of the register of deeds of New Hanover County, the State Board of Education of the State of North Carolina conveyed to the plaintiffs a tract of marsh land in Myrtle Grove Sound, described in said deed, which said deed is attached hereto and marked Exhibit A, and made a part hereof as fully as if the same were incorporated herein.

"3. That by instrument in writing, signed by them, dated December 20, 1937, the plaintiffs offered to sell to the defendant for the sum of $25,000 a part of the lands mentioned in the second paragraph hereof

and more particularly described in said instrument which is attached hereto and marked Exhibit B, and made a part hereof as fully as if the same were incorporated herein; and thereafter, to wit: December 22, 1937, the defendant accepted, in writing, signed by him, said offer, subject to his attorney's approval of title to the lands and premises.

"4. That the plaintiffs have offered to deliver to the defendant a good and sufficient deed, with covenants of warranty, conveying the fee simple title to the lands described in the above mentioned Exhibit B, and the defendant has refused to accept said deed and pay therefor the agreed purchase price, for that he has been advised by his attorney that the plaintiffs were not possessed of an indefeasible fee in and to said lands, for that the same are, or will be, reclaimed land.

"5. Myrtle Grove Sound is one continuous tract comprising more than 2,000 acres of marsh land, extending from the highwater mark on the mainland to the highwater mark on the banks land. The land covered by the water at high tide, but exposed at low tide, is covered either with marsh grass or with a layer of mud anywhere from six inches to two feet deep.

"6. Practically all of the lands referred to in the second and third paragraphs hereof are located south of Snow's Cut in the Intra-Coastal Waterway, which said Snow's Cut is the land out of said waterway which connects Myrtle Grove Sound with the Cape Fear River.

"7. The waters in Myrtle Grove Sound south of Snow's Cut and at the *locus in quo* are affected by the daily tides in the Cape Fear River and the Atlantic Ocean and at low tide practically all of the soil in the sound at the *locus in quo* is exposed and above the level of the water. There is a rather narrow strip of water in what is called the channel located close to the western (or mainland) edge of the sound. However, no part of said channel is within the boundaries of the tracts of land described in the third paragraph hereof, which constitute the subject of this controversy. The nearest inlet from the sea for the above mentioned body of water, and the lands covered thereby, is approximately 12 miles, although prior to 1918 there was, and had been for about 10 years, a shallow inlet from the sea located approximately one mile north of the above mentioned Snow's Cut, but the said inlet no longer exists.

"8. When the United States Government started the dredging of the Intra-Coastal Waterway near the *locus in quo,* its contractor requested and received permission from the plaintiffs to deposit material excavated in the digging of said waterway upon the lands purchased by the plaintiffs from the State Board of Education of North Carolina; and thereafter material excavated in the digging of said waterway was deposited upon a portion of said land, which said portion constitutes the first tract of land referred to in the third paragraph hereof, and said tract of land is now above the level of the water in the sound at high tide.

"9. Prior to the construction of the aforesaid waterway, all the lands described in the third paragraph hereof, as well as the lands described in the second paragraph hereof, were covered by water at high tide, upon which small fish boats, pleasure boats, batteaus and skiffs, none drawing more than twenty inches, had been operated for a number of years, but none of said boats so used in the sound could be classified as vessels engaged in transportation or commerce. At low tide, however, the lands described in the second tract referred to in the third paragraph hereof are now, and were, above the level of the water in the sound.

"10. At low tide a boat drawing more than 8 or 10 inches of water cannot navigate the channel on the west side of the sound, hereinbefore referred to, but at high tide it is possible for small boats drawing less than 12 inches to go over approximately one-half of the lands described in the second tract of the third paragraph hereof covered by the tidal waters.

"10-A. Prior to the construction of the Intra-Coastal Waterway referred to in the eighth paragraph hereof, and except for the period of existence of the shallow inlet referred to in the last sentence of the seventh paragraph hereof, the waters of Myrtle Grove Sound at the *locus in quo* and for some distance to the north thereof, were not affected by the daily tides, and the depth of the water was affected by the winds; if a northerly wind prevailed, then the water was backed up in the sound sometimes to a depth of two feet; but if a southerly wind prevailed, then the water was blown out of the sound, and the sound has been entirely without water for at least three successive days at a time.

"11. The plaintiffs are the owners of all of the land adjacent to the eastern shore of Myrtle Grove Sound, north of Twelfth Avenue in the town of Carolina Beach, and extending northwardly to the southern line of the late R. B. Freeman tract of land, having purchased the same from the Carolina Beach Corporation, and title to the same has been out of the State of North Carolina for more than thirty years. The western boundary of said tract is the eastern boundary of the tracts of land described in the 3rd paragraph hereof.

"12. As a part of the contract entered into between the plaintiffs and defendant, as set forth in the 3rd paragraph hereof, the plaintiffs have agreed and promised to construct a canal, as shown on a map which is attached hereto and marked Exhibit C, and is made a part hereof, having a depth of six feet at mean low water, and a width of sixty feet at the bottom thereof, over the extreme western and southern portions of the first and second tracts of land described in the 3rd paragraph hereof, and deposit all material excavated in the construction of said canal upon the *locus in quo,* so that all of said lands will be above the level of the waters of Myrtle Grove Sound at high tide.

"13. The plaintiffs contend that the defendant should be required to purchase under their contract, for that they are the owners in fee simple of the *locus in quo,* and that the public generally, and that landowners to the north and south of the *locus* in particular, have no 'right, title or interest, riparian or otherwise, in said lands; and that by virtue of their ownership of said land they have the lawful right to construct the above mentioned canal and fill in the above mentioned lands so that the same will be above the level of the waters of Myrtle Grove Sound at high tide.

"14. The defendant contends that the title of the plaintiffs to the first tract of land described in the 3rd paragraph hereof is not good, for that the same are lands reclaimed from tidal waters and by virtue of such reclamation now belongs to the State of North Carolina.   The defendant also contends that the title to the second tract of land described in the 3rd paragraph is not good and that he should not be compelled to purchase the same under his contract for that the plaintiffs have no lawful right to construct the said canal and upon the filling in of said lands the same would immediately become reclaimed land, and would be the property of the State of North Carolina.

"15. It is agreed that if the title to the first and second tracts of land referred to in the 3rd paragraph hereof is good that the defendant will fully comply with the said contract of purchase; it is further agreed that if the title to the first tract of land described in the 3rd paragraph hereof is good and that title to the second tract in said 3rd paragraph hereof is not good, then the plaintiffs are bound to convey, and the defendant is bound to purchase said first tract at a price of $20,000; and if the said title to the said second tract is good and title to the said first tract is not good, then the plaintiffs are bound to convey and the defendant is bound to purchase said second tract at a price of $5,000."

The deed from the State Board of Education of the State of North Carolina to the plaintiffs is dated 4 August, 1930; conveys all that certain tract of marsh land in Myrtle Grove Sound between the mainland and the development known as the town of Carolina Beach, therein particularly described, together with the water and riparian rights, easements and privileges thereunto belonging in fee simple, without reservations.   Said deed is duly executed and recorded.

The court below entered judgment (after making certain findings of fact) as follows:

"It is, therefore, ordered, adjudged and decreed, that the deed of the State Board of Education, dated 4 August, 1930, to the Home Real Estate Loan & Insurance Company and W. F. Shaffner, conveyed the 110 acres of land described therein in fee;

"That the said lands, and especially that part of it agreed to be sold to Mr. C. B. Parmele, are at no stage of the tide covered by navigable waters:

"That the plaintiffs can convey said land conveyed to them by the State Board of Education, and any part thereof, in fee simple."

To said judgment the defendant duly excepted and appealed.

*Kellum & Humphrey for plaintiffs, appellees.*
*Stevens & Burgwin for defendant, appellant.*

BARNHILL, J.    The common law rule that streams are navigable only as far as tidewater extends developed from the fact that England does not have to any great extent nontidal waters which are navigable. This common law rule has been discarded in this country. Here, the term "navigable waters" has reference to commerce of a substantial and permanent character to be, or which may be, conducted thereon. *Leovy v. United States,* 177 U. S., 621, 44 L. Ed., 914. By "navigable waters" are meant such as are navigable in fact and which by themselves or their connection with other waters, form a continuous channel for commerce with foreign countries or among the states. *United States v. The Montello,* 11 Wall., 411, 20 L. Ed., 191; *Miller v. New York,* 109 U. S., 385, 27 L. Ed., 971.

In *S. v. Glenn,* 52 N. C., 321, it is said: "We hold that any waters, whether sounds, bays, rivers or creeks, which are wide enough and deep enough for navigation of sea vessels are navigable waters." Following these decisions it appears that the court below properly concluded that the *locus in quo* is not covered by navigable waters.

It is likewise accepted law that each state has full jurisdiction over the lands within its waters, including the beds of streams and other waters. *Kansas v. Colorado,* 206 U. S., 46. And the title to tidelands is in the state. *Mann v. Tacoma Land Co.,* 153 U. S., 273, 38 L. Ed., 714; *U. S. v. Mission Rock Co.,* 189 U. S., 391; *Knight v. United Land Assn.,* 142 U. S., 161, 35 L. Ed., 974.

Before flats lying between highwater mark and the channel of navigable waters are reclaimed by the owner, the public and adjoining owners may exercise paramount right of navigation over them, but if the owner elects to reclaim them he has a right to do so, and if the result is less beneficial to the adjoining owners they cannot complain. *Richardson v. Boston,* 19 How., 263, 15 L. Ed., 639.

The state may either sell or convey its title to lands below highwater mark to a riparian owner or his assigns, or, in case of their neglect to take from the state its grants on the terms offered them, to a stranger, who succeeding to its title has no relation to the adjacent riparian owner except that of common boundary. *Hoboken v. Pennsylvania R. R. Co.,* 124 U. S., 656, 31 L. Ed., 543.

As the *locus* was originally the property of the State, does it possess the power to part with the title thereto, and, if so, in what manner?

The rights of the parties to this controversy are to be determined by the answers to these questions.

The authorities bearing upon this subject in other states are conflicting and it is difficult to thread our way through the divergent decisions. To some extent this conflict may be explained by noting the distinction between the titles to flats and marshes over which the tide ebbs and flows, but which are not in any correct sense of the term navigable waters, and those cases in which the land sought to be recovered is covered by navigable water. *Land Co. v. Hotel,* 132 N. C., 517, 44 S. E., 39. The apparent conflict in some of our decisions arises from the fact that under our law there are two methods by which the State may part with its title to public lands. In respect to navigable waters the State has no right to grant or convey the land under such waters for any purpose which will destroy or materially impede the use of such waters for navigation. C. S., 7543, makes provision for this situation and permits the grant of an easement for the purpose of erecting wharves on the side of the deep waters of any navigable sound, river, creek or arm of the sea next to the lands of the person erecting such wharves. Entries for this purpose are limited to those who own the adjacent land. The decisions in *R. R. v. Way,* 172 N. C., 774, 90 S. E., 937, and *Land Co. v. Hotel, supra,* are made to turn on the provisions of this statute, and they are not authoritative in this controversy.

The right of an individual citizen to make entry on vacant land belonging to the State, and the right of the Secretary of State to issue grants therefor are limited by our statute. All vacant and unappropriated lands belonging to the State are subject to entry by any citizen thereof and to grant by the Secretary of State except: "(1) Lands covered by navigable waters; (2) lands covered by the waters of any lake, or which, though now covered, may hereafter be gained therefrom by recession, draining or diminution of such waters, or have been so gained heretofore and not lawfully entered; (3) marsh or swamp land, where the quantity of land in any one marsh or swamp exceeds 2,000 acres, or where if of less quantity the same has been surveyed by the State, or by the State Board of Education with a view to draining and reclaiming the same." C. S., 7540. An entry made to swamp land when the body contains more than 2,000 acres is void and a grant under such entry is void. *Board of Education v. Lumber Co.,* 158 N. C., 314, 73 S. E., 994.

The statute, C. S., 7542, provides that the words "marsh and swamp land" and "swamp lands" employed in the statute creating the Literary Fund and Literary Board of North Carolina, and the State Board of Education of North Carolina and in any act in relation thereto, shall be construed to include all those lands which have been, or may now be known and called "swamp" or "marsh" lands, etc.

The *locus in quo* is marsh land and constitutes a part of one continuous tract comprising more than 2,000 acres of marsh land. Thus it appears that no part thereof is subject to entry or grant under the pertinent statutes. How, then, if at all, may the State part with title thereto? Under the terms of C. S., 7542, the State Board of Education is authorized to sell and convey marsh and swamp lands at public or private sale. However, neither our present Constitution nor our statute law specifically vests title to marsh and swamp lands in the State Board of Education, which is a body corporate under the terms of C. S., 5394. Article IX, sec. 10, of the Constitution provides that the Board of Education is successor to all the powers and trusts of the president and directors of the Literary Fund of North Carolina. An examination of our former statutes discloses that the acts of the General Assembly, session 1825, chapter 1, created "the president and directors of the Literary Fund of North Carolina" a body corporate and vested title to all public lands, including marsh and swamp lands, in said corporation. The provisions of this statute were brought forward in chapter 66 of the revised statutes of 1836. As the corporation thus created held title to all public lands at the time the present Constitution was adopted, the provisions of Article IX, sec. 10, thereof vested title thereto in the present State Board of Education, and C. S., 7621, authorized the latter corporation to sell and convey the same.

It follows that the deed from the State Board of Education to the plaintiffs conveyed a valid title to the lands therein described, which include the *locus in quo*. And the plaintiffs can convey a good title to the defendant unless such title is affected by the fact that the lands described in the deed to the plaintiffs has been reclaimed since the plaintiffs acquired title thereto.

The deed to the plaintiffs conveys more than an easement. It conveys a fee simple title. The mere fact that the plaintiffs have improved the lands thus acquired by filling in and reclaiming the same could not be held to divest them of title. Their deed covered marsh land and conveyed a fee. In *R. R. v. Way, supra,* the plaintiff owned an easement for the purpose of maintaining a wharf in navigable waters. Herein lies the distinction.

We are of the opinion that the State Board of Education was vested with title to the property conveyed to the plaintiffs; that its deed to the plaintiffs conveyed a valid title in fee; and that the deed tendered by the plaintiffs to the defendant conveys a fee simple title to the lands therein described.

C. S., 7583, provides that: "Whenever in the construction of the inland waterway, or in the improvement of any other waterway within this State, lands theretofore submerged shall be raised above the water by deposit of excavated material, the land so formed shall become the

property of the United States for a distance of 1,000 feet on either side of the center of such canal or channel. It does not appear from the agreed statement of facts, and we cannot definitely determine from an inspection of the plat filed as a part of the record herein, whether any portion of the *locus in quo* is located within 1,000 feet of the center of the inland waterway canal. We, therefore, express no opinion as to the title of the plaintiffs to said lands as against the United States. We merely adjudge that the plaintiffs' title is good as against the State of North Carolina.

Affirmed.