STATE OF NORTH CAROLINA Ex Rel. DAVID SINCLAIR, Solicitor of the EIGHTH JUDICIAL DISTRICT, v. TOM CROOM, Trading and Doing Business as "TOM'S PLACE," and NATIONAL CASH REGISTER COMPANY, Intervener.

(Filed 8 May, 1940.)

**1. Nuisances § 11: Chattel Mortgages § 11: Constitutional Law § 17— Property of innocent parties may not be sold unless they have knowledge of nuisance.**

A proceeding to abate a nuisance against the public morals is not a proceeding *in rem* against the property itself, but is *in personam*, and the provisions of the statute for padlocking the premises and for the sale of chattels used in connection with the operation of the nuisance, being more than sufficient for the abatement of the nuisance, are penalties prescribed by law for its violation, and therefore innocent lessors of the premises or owners or mortgagees of chattels which do not constitute a nuisance *per se* may not be deprived of their property rights unless they have actual or constructive notice that the property is used in the operation of the nuisance, and they have the right to have this issue determined by the verdict of a jury.

**2. Same—**

Intervener sold a cash register under a conditional sales contract and same, together with other chattels of the purchaser, was seized for sale upon the determination that the purchaser was using same in the maintenance of a nuisance against public morals. Upon the facts agreed intervener had no actual or constructive knowledge that the cash register was used in the maintenance of a nuisance. *Held:* Only the equity of the purchaser could be condemned for sale under the statute and the intervener may be charged with no part of the cost.

Appeal by intervener from *Stevens, J.,* at September Term, 1939, of New Hanover. Reversed.

This case was heard upon an agreed statement of facts, according to which one Tom Croom was, prior to and until 29 July, 1939, engaged in conducting a place known as "Tom's Place" in New Hanover County, at which place the said Croom, as found by the court, was engaged in the operation of a nuisance where there was assignation for lewd and immoral purposes, where whiskey was consumed, and the place "was operated in such a way as to shock the public morals and sense of decency of the community."

Some time prior to the bringing of the injunction proceeding, and the ascertainment of the nuisance as conducted by Croom, the intervener had sold to Tom Croom a cash register, upon a conditional sales contract, and had received one installment of $10.00, leaving a balance of $70.75 due upon the purchase price when this action was brought. Pending the proceeding, and just before judgment was signed in the action, the

National Cash Register Company was permitted to intervene, setting up the facts with regard to the cash register and claiming it as its property.

It is agreed and understood that the cash register was a part of the personal property used on the premises and that the intervener had no actual knowledge of the nature of the business carried on by the defendant.

Holding that under the statute the court had the power to condemn, confiscate, and sell this property, regardless of the fact that the intervener had no knowledge of the existence or maintenance of a nuisance, the court entered a judgment confiscating it and ordering it to be sold, free and clear of any right which the intervener claimed therein. From this judgment the defendant intervener appealed.

*A. A. Marshall, W. A. Simon, Jr., and George Rountree, Jr., for plaintiff, appellee.*

*Rodgers & Rodgers for intervener, appellant.*

SEAWELL, J. This case is governed by *Habit v. Stephenson, ante,* 447, and *Barker, Solicitor, v. Palmer, ante,* 519. In both of these cases this Court has decided that the property of an innocent person, which in itself is not of a character such as to constitute a nuisance *per se,* or according to its ordinary use, may not be condemned, or its innocent use by the owner forbidden or destroyed, because it happens to be in the possession of a person who is guilty of maintaining a nuisance, aided by its use, unless the owner has participated in the creation or maintenance of the nuisance, or has knowledge thereof, or by the exercise of due diligence should have known of its existence. The taking of such property, or the condemnation of its use as against such innocent owner, under such circumstances, is considered a taking without due process of law. In both of these cases it will be noted that the court does not accept, under the particular circumstances here outlined, the doctrine that the proceeding to abate the nuisance is purely *in rem,* such as might be, and has been from ancient times, pursued for the abatement of a nuisance *per se*— where the property seized, confiscated, or destroyed is of a character especially designed and ordinarily used for carrying on the nuisance, and is in itself inherently such a nuisance.

The position of the Court in the present case may be fairly illustrated by reference to *Barker, Solicitor, v. Palmer, supra,* where the Court declined to permit the padlocking of the premises of an innocent lessor on the ground that they were used by the lessee in the maintenance of a nuisance, without first having the issue as to his participation in the nuisance, or his knowledge thereof, inquired of by a jury, as the lessor defendant had demanded. *Barker, Solicitor, v. Palmer, supra.*

Under a just government, men do not suffer punishment or penalty unless they have violated some law. Confiscation of property which may be said to be innocent in itself and ordinarily used for lawful and innocent purposes, as required by the statute under consideration, cannot be considered in any other light than as a penalty for having engaged in the maintenance of the nuisance. For example, the padlocking of the premises of an innocent lessor for a whole year against its use for any purpose is so wholly beyond any measure necessary for the proper abatement of the nuisance that it must be regarded as a vindictive visitation of the law, based upon the fictional declaration in the act that the building itself is a nuisance. Of course, we are using the term "vindictive" in its technical sense, indicating a punishment or penalty for an unlawful act. This becomes plain since in no aspect of the case might the house be a nuisance *per se,* and since it is beyond the power of the Legislature to declare that to be a nuisance which essentially is not a nuisance. 46 C. J., p. 652, note 28. It could be sustained only on the principle that the owner had actively or passively participated in the creation or maintenance of the nuisance for which, of course, the Legislature has the right to prescribe both punishment and penalty. The same is true of the confiscation of personal property, which confiscation in many instances can have no relevancy to abatement. The exactions made by the act are too substantial and important to be classed as one of those trivial burdens which must be borne as an incident of citizenship. Its confiscatory features can be sustained only by rational interpretation, reading into it the necessity of notice and hearing.

They cannot be explained or justified by the simple statement that they are in aid of abatement, nor that the nuisance was by sufferance of the owner. Compare: *People ex rel. Lemon v. Elmore,* 256 N. Y., 489, 177 N. E., 14, 75 A. L. R., 1292, 1295. (In the cited case the Court definitely abandons the *in rem* doctrine by proposing the theory of personal responsibility.) The statute before us does not attempt to impute to the owner a knowledge of the nuisance, even *prima facie,* and we are persuaded that it did not intend to act upon such assumption. The theory of agency, whether declared in a statute or adopted by the Court, is so wanting in reality as to be capricious. The factual situation between a person who in good faith places his property in the hands of another under a sales contract or between the lessor and lessee of property makes a declaration of agency arbitrary. We may say, with equal force, that a law which requires such a person at all times to know what is being done with his property, in other words, by the act of sale or lease to make a public guaranty that it shall at all times be used for a legitimate purpose, is opposed to common experience and the necessity of commercial and social intercourse, and is so obviously unjust as to be

arbitrary. We regard it as an unreasonable and unconstitutional restriction upon the use of property, and confiscation upon that ground is taking property without due process of law. A rational interpretation of the law before us does not allow this to be done.

A clear distinction must be maintained between the mere abatement of the nuisance and the particular matter here at issue, that is, the padlocking of the premises of an innocent owner or the confiscation and sale of his property as a statutory incident to such abatement.

With respect to trial by jury, and other constitutional guaranties by which property rights are protected, cases holding to the extreme theory that the property of an innocent owner used in connection with the maintenance of a nuisance by another may be confiscated although the owner does not participate in the maintenance of the nuisance and has no knowledge, actual or constructive, thereof, sometimes point out that the abatement of public criminal nuisances by an equity proceeding is of ancient origin, tracing the jurisdiction back to the time of Queen Elizabeth. *Mugler v. Kansas,* 123 U. S., 623, 31 L. Ed., 205. Other authorities regard it as of comparatively modern origin. *Pana v. Central Washed Coal Co.,* 260 Ill., 111, 102 N. E., 992; *Simpson v. Justice,* 43 N. C., 115. It really makes no difference which brand of erudition we prefer, since the device of padlocking the property of an innocent person as an aid to abatement of a nuisance or as a penalty therefor has not been shown to be of such ancient origin. While other sections of the Constitution may be invoked, the guaranty of trial by a jury provided in Article I, section 19, of the State Constitution, cannot be evaded by the device of enlarging the jurisdiction of the equity court by statute and turning over the determination of these rights to a chancellor's court, where a jury is not required. A statute which limits the judicial inquiry as to the mere existence of the nuisance and follows this with the authority to confiscate, does not meet constitutional requirements in its incidence upon innocent owners of property.

The two cases cited affirmatively answer the question whether such a jury trial must be accorded an allegedly innocent owner whose property has been used without his knowledge or assent in the creation or maintenance of a nuisance. And the holding of the court, which we regard as necessary to maintain the constitutionality of the statute, is supported by what we regard as the best considered opinions on the subject which we find consonant with the genius of our people and the interpretation which we have hitherto put on our constitutional guaranties respecting liberty and the rights of property. *Gregg v. People,* 65 Colo., 390, 175 Pac., 483; *Holmes v. United States,* 26 Fed., 489; *State ex rel. Wilcox v. Gilbert,* 126 Minn., 95, 147 N. W., 953; *State ex rel. Robertson v. Wheeler,* 131 Minn., 308, 155 N. W., 90; *Hinson v. Porter,* 149 Ga., 83, 99 S. E., 119.

There is nothing in the record disclosing that the intervening defendant, National Cash Register Company, either participated in the nuisance carried on by Tom Croom, had any knowledge thereof, or could by due diligence have obtained such knowledge—facts which must affirmatively appear before its property could be confiscated. *Habit v. Stephenson, supra.* The court was in error in signing the judgment declaring the interest of the said National Cash Register Company in the property forfeited.

According to the construction of the statute by the Court in *Habit v. Stephenson, supra,* the court was also in error in assuming that the statute requiring the sale of condemned property in the manner provided for sale of chattels under execution referred only to details of advertising, exposure to auction, and matters of that kind. It involves the preservation of the fundamental right of an innocent owner or claimant of the property sought to be sold to have his case heard as to such ownership. When he is in court either by service or summons, originally or by intervention, he is not there for the mere purpose of "seeing proceedings" as in the caveat to a will, but is entitled to make his defense at that time. The intervener did make such defense, and upon the agreed statement of facts only the interest of the defendant Tom Croom, acquired by his ten-dollar payment on the cash register, was subject to condemnation and confiscation by the court.

Under the view of the rights of the parties taken by the trial judge, no attempt was made in the judgment to segregate or specify what equitable interest the defendant Croom may have had in the cash register. He had made a payment of ten dollars on the purchase price of $80.75.

As to the intervener, the judgment is reversed. Subject to the right of the plaintiff to make a motion in apt time for the separate condemnation of the interest of Tom Croom in the cash register, not exceeding the sum of ten dollars paid thereupon as a first installment, the property should be surrendered to the intervener, National Cash Register Company, against which no costs of this action should be taxed.

The cause is remanded for judgment in accordance with this opinion.
Reversed.