FRANK D. PERRY AND JULIAN H. RUMLEY v. S. W. MORGAN, C. K. HOWE AND JOEL H. DAVIS.

(Filed 9 April, 1941.)

**1. Deeds § 18—**

The statute providing for the registration of land under the "Torren's System" is not in derogation of common right but is of a remedial character, and should be liberally construed according to its intent.   Michie's Code, 2377, *et seq.*

**2. State Lands § 1a—**

All vacant and unappropriated lands belonging to the State, with certain well defined exceptions, are subject to entry and grant, C. S., 7540, *et seq.*, and when there are successive grants of the same land, the prior grant prevails.

**3. Boundaries § 3—**

A patent ambiguity cannot be explained by parol, a latent ambiguity can.

**4. Same: State Lands § 1b—**

The description in the State grant under which defendants claim in this case *is held* sufficiently definite to be aided by parol, and defendants' parol evidence as to its location *is held* sufficient to be submitted to the jury.

**5. Boundaries § 1—**

The meaning of a deed as to what land it covers and what estate it conveys are questions of law for the court, where the boundaries are on the land is a question of fact for the jury.

**6. Deeds § 18: State Lands § 1b—In this proceeding for registration of land under "Torren's System," exceptions held to raise issue of fact for jury.**

In this proceeding for the registration of land under the "Torren's System," defendants' evidence of claim under a prior State grant and parol evidence in explanation of a latent ambiguity as to the location of the land

embraced in the grant, *is held* sufficient to raise an issue of fact as to the location of the land claimed by defendants for the determination of the jury, and defendants' exception to the refusal of the court to submit an issue to the jury as to whether petitioners are the owners of the land and entitled to have title thereto registered under the statute, is sustained. Michie's Code, 2387, subsec. 3.

**7. State Lands § 1a—**

While lands covered by navigable waters are not subject to State grant, defendants' evidence tending to show that the *locus in quo* is not covered by navigable waters *is held* sufficient to raise issue of fact for the determination of a jury.

APPEAL by C. K. Howe and Joel H. Davis, defendants, respondents, from *Thompson, J.,* at November Term, 1940, of CARTERET. New trial.

The petitioners, Frank D. Perry and Julian H. Rumley, filed a petition in the Superior Court of Carteret County to have the title to certain lands claimed by them registered and brought under the operation and provisions of chapter 90 of the Public Laws of 1913, as amended, which is now chapter 47, N. C. Code, 1939 (Michie), chapter designated "Land Registrations." The respondents Howe and Davis filed separate answers.

The petitioners plaintiffs claimed title by reason of two grants to them by the State of North Carolina, one dated 6 May, 1937, and the other dated 19 July, 1937.

The respondents claim title to the same land under grant issued by the State of North Carolina to Joel H. Davis and Joe P. Roberson, dated 25 October, 1853, and recorded in Book AA, at page 223, office of the register of deeds for Carteret County.

The matter was referred to Hon. R. A. Nunn, as examiner of title, and was heard by him. At the hearing of the matter, evidence was submitted by both petitioners and respondents in support of their claims and the respondents especially claimed the petitioners had no title to the land for the reason that the lands claimed by them under their grants were the same lands as were granted to Joel H. Davis and Joe P. Roberson by grant dated 25 October, 1853.

The report of the examiner of title was duly filed decreeing the petitioners owned the land and were entitled to have title registered. To this report the respondents, Howe and Davis, filed their exceptions, as provided by section 2387, subsection 3, North Carolina Code, 1939, and requested the court to submit the following issue to the jury: "Are the petitioners the owners and entitled to have title to the lands described in the petition registered, as provided by law?"

N. C. Code, *supra,* ch. 47, sec. 2387, subsec. 3, is as follows: "Exceptions to Report—Any of the parties to the proceeding may, within twenty days after such report is filed, file exceptions, either to the conclusions of law or fact. Whereupon the clerk shall transmit the record to the

judge of the superior court for his determination thereof; such judge may on his own motion certify any issue of fact arising upon any such exceptions to the superior court of the county in which the proceeding is pending for a trial of such issue by jury, and he shall so certify such issue of fact for trial by jury upon the demand of any party to the proceeding. If, upon consideration of such record, or the record and verdict of issues to be certified and tried by jury, the title be found in the petitioner, the judge shall enter a decree to that effect, ascertaining all limitations, liens, etc., declaring the land entitled to registration accordingly, and the same, together with the record, shall be docketed by the clerk of the court as in other cases, and a copy of the decree certified to the register of deeds of the county for registration as hereinafter provided. Any of the parties may appeal from such judgment to the supreme court, as in other special proceedings."

The court refused to submit the issue of fact properly requested, and dismissed the exceptions of the respondents and signed judgment, confirming and approving the examiner of title's report, his finding of facts and conclusions of law; to which the respondents excepted, assigned error and appealed to this Court. The material exceptions and assignments of error will be set forth, with the necessary facts, in the opinion.

*J. F. Duncan, W. B. R. Guion, R. E. Whitehurst, and John A. Guion for plaintiffs.*
*D. M. Clark and C. R. Wheatley for defendants.*

CLARKSON, J. The proceeding resorted to by plaintiffs, petitioners, is known generally as the Torren's Law. The principle of the "Torren's System" is conveyance by registration and certificate instead of by deed, and assimilates the transfer of land to the transfer of stocks in corporations. This statute is not in derogation of common right, but is of a remedial character, and should be liberally construed according to its intent. *Cape Lookout Co. v. Gold,* 167 N. C., 63; *Mfg. Co. v. Spruill,* 169 N. C., 618; *Dillon v. Broeker,* 178 N. C., 65.

The court below rendered judgment and decree of registration for plaintiffs. In the judgment is the following: "The above entitled cause coming on to be heard at the November Term, 1940, of Carteret County Superior Court, upon the pleadings and the report of Hon. R. A. Nunn, Examiner of Titles, and upon the exceptions thereto filed by the respondents C. K. Howe and Joel H. Davis, and the Court having heard the evidence and the findings of fact and conclusions of law and examined the Exhibits introduced in evidence and having heard full argument by counsel for petitioners and respondents and thereupon being of the opinion upon the evidence that no issue of fact arises and that it would

be improper to submit any issue to the jury; and upon such full consideration of the record the Court finding the title to the land described in the petition to be in the petitioners and finding that said petitioners are entitled upon the record to a decree of registration of their title to said land; It Is Thereupon Ordered and Adjudged," etc.

The plaintiffs, petitioners, present the following questions for our determination: Was there any evidence warranting submission of an issue as to the location of a grant of 25 October, 1853, issued by David S. Reid, Governor, under which appellants claim. We think so.

The defendants, respondents Howe and Davis, excepted to the examiner's finding of facts on the ground that sufficient and competent evidence was presented at the hearing to the fact that the land upon which the U. S. Government deposited the material as dredged from the channel was an addition to the island of marsh already existing and within the boundary lines of the grant by the State of North Carolina to Joel H. Davis and Joe P. Roberson, dated 25 October, 1853, and recorded in Book AA, at page 223, office of the register of deeds for Carteret County. That the grants to Perry and Rumley, dated 6 May and 19 July, 1937, by Clyde R. Hoey, Governor, was the land within the boundaries of the grant to Davis and Roberson in the year of 1853. The respondents, Howe and Davis, excepted to the examiner's conclusions of law for the reason that they were erroneous and not in accordance with the evidence. The lands set forth in the petition had been granted by the State of North Carolina to Joel H. Davis and Joe P. Roberson on 25 October, 1853, and therefore could not be granted to the petitioners in 1937. That the State is without power to make a grant of land which has already been granted and in the event such a grant is made, the same is void.

In *Janney v. Blackwell,* 138 N. C., 437 (438-9), is the following: "The statutes in force in this State for more than a century have permitted 'all vacant and unappropriated lands belonging to the State' (with certain well defined exceptions) to be entered and grants taken therefor. Code, section 2751. 'To be subject to entry under the statute, lands must be such as belong to the State and such as are vacant and unappropriated.' *Hall v. Hollifield,* 76 N. C., 476; *S. v. Bevers,* 86 N. C., 588."

There is no question but that defendants, Howe and Davis, are the successors in title to the grant of 1853 to Joel H. Davis and Joe P. Roberson. The evidence of defendants was to the effect that the land granted was described as follows: "A tract of land containing fifty acres, lying and being in the County of Carteret on the East side of Newport Channel and Northeast of Bogue Channel and about South West of Town Marsh beginning on the South side of the mouth of a slue, that

runs on the South side of Reed Marsh where said slue empties into Newport Channel, running thence the various courses of the channel, viz.: South twenty-six degrees West Sixty-eight poles, South five degrees East fifty-eight poles, South forty-seven and a half degrees East eighty poles, South fifty-five degrees East one hundred and ten poles, then North thirty-five degrees East twenty-seven poles, then North fifty-five degrees West one hundred and seven poles, then North forty-seven and a half degrees West sixty-eight poles, then North five degrees West forty poles, then North twenty-six degrees, East sixty poles and thence to the Beginning."

It will be noted that it recites nine courses and distances, it also recites the (1) acreage (fifty), (2) being in the County of Carteret on the East side of Newport Channel, (3) Northeast of Bogue Channel, (4) about Southwest of Town Marsh—Beginning on the South side of the mouth of the slue, that runs on the South side of Reed Marsh where said slue empties into Newport Channel, running thence the various courses of the Channel, etc.

Capt. Geo. J. Brooks, a civil engineer, testified, in part: "I worked for the U. S. Government from 1907 to 1917, until war was declared, and worked in Beaufort Harbor. I know Reed's Creek and Reed's Marsh, and have been through the slough running south of Reed's Marsh and north of Shark Shoal, which is known as Westernhead Slough. (Capt. Brooks examined the map attached to the petition, and Mr. Wheatley read the description from the grant to Joel H. Davis and J. P. Roberson.) . . . The beginning point in the description read by Mr. Wheatley is somewhere in the mouth of the creek, as shown on the map attached to the petition. . . . The mouth of the slough varies from time to time as much as 150 feet; in my time it has changed its location several times as much as 150 feet. . . . On this map attached to the petition, I identify the beginning point called for in the Grant of 1853, read by Mr. Wheatley and locate it where I mark the letter 'A,' and beginning there and following the calls in the description read by Mr. Wheatley, I would say the land described in the Grant of 1853 lies within the boundaries of the grants to Mr. Perry. Since I have known the land I have known it as Shark Shoal with some grass on it and in some places a little land." This is qualified, on cross-examination, that he never attempted to locate the land shown on the map, on the ground.

C. K. Howe testified, in part: "I have been with the U. S. War Department and worked in the department between 1907 and 1912, and surveyed Beaufort harbor and know the territory of Reed's Marsh. I have been through the slough one hundred times or more and once platted Shark Shoal. I made a survey for the U. S. Government in 1908 and

made a map of this part of Beaufort harbor, and this is the map of the survey. The original is in the Wilmington office and this is a copy of it. (The map identified by Mr. Howe is offered in evidence and marked Respondents' Exhibit 1.) . . . The land described in the Grant of 1853 to Davis and Roberson lies within the boundaries of Perry's Grant as shown on map attached to petition. . . . Marsh Island lay in the waters of Newport River. The land described in the Grant of 1853 is bounded by Westernhead Slough, and Newport River, on the east by Sand Shoal, on south by Port Channel. The marsh was filled by material dredged from Port Channel and Marsh Island and shoal was filled in. We were engaged several months in surveying the harbor in 1908, and I have seen Marsh Island at highwater. I don't recall seeing water bushes growing on it. At high tide it was 5 or 6 inches above water. It was an island." (No cross-examination of Mr. Howe.)

There was other corroborating evidence. We think the evidence was sufficient to have been submitted to a jury.

A patent ambiguity cannot be explained by parol, a latent ambiguity can.

In *Hurley v. Morgan*, 18 N. C., 425 (430), *Chief Justice Ruffin*, for the Court, said: "The meaning of a deed as to what land it covers, or as to what estate it conveys, is equally a question of law, and therefore is to be decided by the court. What are the *termini* of the lines, are points of construction; *where they are*, questions of fact. These observations are found in so many cases as to be familiar, without particular references."

We think the present case presented questions of fact to be determined by a jury, both record and parol evidence is permissible to aid in the identification of the *locus in quo*. *Farmer v. Batts*, 83 N. C., 387; *Green v. Harshaw*, 187 N. C., 213; *Bissette v. Strickland*, 191 N. C., 260. The beginning corner and the calls and distances, and other boundary lines in the grant of 1853, *where they are* can be substantially determined by parol evidence.

The second question of plaintiffs, petitioners: "Was land covered by navigable waters at normal high tide subject to entry and grant?" It is well settled that land covered by navigable water is not subject to entry and grant. N. C. Code, *supra*, sec. 7540.

It is also settled, as said in *Ins. Co. v. Parmele*, 214 N. C., 63 (68): "By 'navigable waters' are meant such as are navigable in fact and which by themselves or their connection with other waters, form a continuous channel for commerce with foreign countries or among the states. *U. S. v. The Montello*, 11 Wall., 411, 20 L. Ed., 191; *Miller v. N. Y.*, 109 U. S., 385, 27 L. Ed., 971." See *U. S. v. Appalachian Elec. Power Co.*, decided 16 December, 1940; 85 Law Ed. (Adv. Op.), p. 201.

There was sufficient evidence to be submitted to the jury that the *locus in quo* was not navigable, but subject to entry and grant. C. K. Howe testified: "At high tide it was 5 or 6 inches above water. It was an island." There was other corroborating evidence on this aspect.

It is a pregnant circumstance that the land in controversy was granted by the State in 1853, this would hardly have been if the land was not subject to entry and grant, it not being "navigable waters."

For the reasons given, we think there must be a

New trial.