STATE OF NORTH CAROLINA EX REL. S. THOMAS RHODES, SECRETARY, DEPARTMENT OF NATURAL RESOURCES AND COMMUNITY DEVELOPMENT v. VIVIAN ANNE SIMPSON

No. 525PA88

(Filed 9 November 1989)

1. **Appeal and Error § 6.9 (NCI3d)— interlocutory order granting jury trial—immediate appeal**

   An interlocutory order that denies a motion to deny a demand for a jury trial affected a substantial right and is immediately appealable.

   **Am Jur 2d, Appeal and Error § 85.**

2. **Jury § 1 (NCI3d)— right to jury trial—necessity for existence in 1868**

   The right to a jury trial under Art. I, § 25 of the N. C. Constitution applies only to actions respecting property in which the right to a jury trial existed at common law or by statute at the time of the adoption of the Constitution of 1868.

   **Am Jur 2d, Jury § 17.**

3. **Jury § 1 (NCI3d); Waters and Watercourses § 7 (NCI3d)— action to enjoin dredge and fill of marshland—no right to jury trial**

   There was no right under Art. I, § 25 of the N. C. Constitution to a jury trial in an action instituted by the State pursuant to the Coastal Area Management Act of 1974 and the Dredge and Fill Act of 1969 to enjoin dredge and fill development

of marshland by a private property owner since the State's allegations would not have supported actions at common law for damage to real property or to abate a nuisance, and the action brought by the State did not exist at common law or by statute at the time of the adoption of the Constitution of 1868.

**Am Jur 2d, Jury §§ 17, 32, 44.**

Justice WEBB concurring in the result.

ON appeal by plaintiff of a constitutional issue pursuant to N.C.G.S. § 7A-30(1) and on discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, affirming an order granting defendant a jury trial, entered by *Tillery, J.*, on 25 June 1987 in Superior Court, CARTERET County. *State ex rel. Rhodes v. Simpson*, 91 N.C. App. 517, 372 S.E.2d 312 (1988). Heard in the Supreme Court 11 September 1989.

*Lacy H. Thornburg, Attorney General, by J. Allen Jernigan, Assistant Attorney General, for the State-appellant.*

*Bennett, McConkey, Thompson, Marquardt & Wallace, P.A., by Thomas S. Bennett, for defendant-appellee.*

*Conservation Council of North Carolina, by John D. Runkle, General Counsel, amicus curiae.*

MEYER, Justice.

At issue is the right of a defendant to a jury trial in an action brought by the State to enforce wetland protection provisions of the Coastal Area Management Act of 1974 (CAMA), N.C.G.S. §§ 113A-100 to -128 (1983 & Cum. Supp. 1985), and the Dredge and Fill Act of 1969, N.C.G.S. § 113-229 (1983). The trial court granted defendant's demand for a jury trial over the State's objection. The Court of Appeals affirmed, construing only article I, section 25 of our state Constitution. The Court of Appeals held that this action constituted a controversy at law such as existed at the time of the adoption of the 1868 Constitution and that the action affects property, thus entitling defendant to a jury trial. On appeal, defendant argued solely that article I, section 25 entitled her to a jury trial, basing her reasoning on that of the Court of Appeals. We hold that CAMA and the Dredge and Fill Act are recent creations of the legislature such that the provisions

of article I, section 25 of the state Constitution do not apply. Accordingly, we reverse.

The General Assembly adopted the Dredge and Fill Act in 1969 and CAMA in 1974 to protect valuable coastal resources that had gone unregulated previously. *See* N.C.G.S. § 113A-102 (1983). The Coastal Resources Commission in 15 NCAC 7H .0200 has designated coastal wetlands (marshland) as an area of environmental concern pursuant to N.C.G.S. § 113A-113(a) and (b)(1). Coastal wetlands receive the "highest priority" of protection, 15 NCAC 7H .0205(c) (1985), because "[w]ithout the marsh, the high productivity levels and complex food chains typically found in the estuaries could not be maintained," 15 NCAC 7H .0205(b) (1985). *See Adams v. Dept. of N.E.R.*, 295 N.C. 683, 692-93, 249 S.E.2d 402, 407-08 (1978).

During a routine flight on 17 September 1985, Natural Resources and Community Development (NRCD) personnel observed a placement of fill materials on about five thousand square feet of property owned by defendant. Defendant's property is located in Carteret County near Stella, adjacent to Cales Creek, which is a tributary of the White Oak River. Saw grass (*Cladium jamaicense*), bulrush (*Scirpus* spp.), salt grass (*Distichlis spicata*) and cord grass (*Spartina alterniflora*) vegetate the site. The presence of this vegetation in part defines "coastal wetlands" protected under the statute. N.C.G.S. § 113A-113(b)(1) (1983).

On 30 January 1986, NRCD served defendant with a notice of violation requiring her to cease and desist her fill activity and to restore the coastal wetlands destroyed by filling activity. Defendant refused to comply. In a follow-up notice, NRCD served a notice of continuing violation. This notice included notice of a civil assessment to the effect that "[e]ach day that the area goes unrestored will be considered a separate violation with separate assessments of up to $2500 to be levied on a *per day basis.*" *See* N.C.G.S. § 113A-126(d)(1) and (2) (1983). Following defendant's continued refusal to restore the area, NRCD referred the matter to the Attorney General, who instituted this action.

The State alleged in a verified complaint that the defendant placed fill material on lands subject to regulation under the provisions of CAMA and the Dredge and Fill Act without first obtaining a permit. The State sought mandatory injunctive relief for the removal of the fill material. The State did not seek enforcement of the civil penalties.

STATE EX REL. RHODES v. SIMPSON

[325 N.C. 514 (1989)]

Subsequent to the filing of her answer, defendant demanded trial by jury. By order filed 10 August 1987, Judge Tillery denied the State's motion to deny defendant's demand for a jury trial, which, in effect, granted a jury trial to defendant. The State appealed to the Court of Appeals, which consolidated this matter for hearing with *State ex rel. Rhodes v. Gaskill*, 91 N.C. App. 639, 372 S.E.2d 746 (1988), *appeal dismissed per curiam as moot*, 325 N.C. 424, 383 S.E.2d 923 (1989). The Court of Appeals affirmed the trial court's ruling in favor of defendant's demand for trial by jury. The State appealed as of right pursuant to N.C.G.S. § 7A-30(1) on the ground that the case involved a substantial question arising under the state Constitution. Because this case raised a substantial question under the North Carolina Constitution and because the case involves legal principles of major significance to the jurisprudence of this State, we also granted the State's petition for discretionary review.

[1] We note as an initial matter that although this appeal is of an interlocutory order, it is properly before the Court. An interlocutory order that denies a motion to deny a demand for jury trial affects a substantial right and is immediately appealable. *Faircloth v. Beard*, 320 N.C. 505, 507, 358 S.E.2d 512, 514 (1987).

[2] Article I, section 25 of the Constitution of 1970 (formerly article I, section 19 of the Constitution of 1868), provides:

> In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolable.

This Court has construed the predecessor to section 25 to apply only to actions respecting property in which the right to jury trial existed either at common law or by statute at the time of the adoption of the 1868 Constitution. *Railroad v. Parker*, 105 N.C. 246, 11 S.E. 328 (1890). For causes of action created since 1868, the right to a jury trial depends upon statutory authority. *Groves v. Ware*, 182 N.C. 553, 558, 109 S.E. 568, 571 (1921). In the absence of statutory authority, there is no right to the trial of a case before a jury where the legislature created the cause of action after adoption of the 1868 Constitution. *North Carolina State Bar v. Dumont*, 304 N.C. 627, 641, 286 S.E.2d 89, 97 (1982).

The statutory scheme of CAMA envisions a permit process for projects such as defendant's, subject to review by a court sitting

without a jury. *Adams v. Dept. of N.E.R.*, 295 N.C. 683, 704, 249 S.E.2d 402, 414. CAMA provides for a trial by jury only where a party owning land affected by a final decision of the Coastal Resources Commission petitions the superior court alleging a taking. N.C.G.S. § 113A-123(b) (1983). There is no other statutory authority in CAMA nor in the Dredge and Fill Act granting a right to trial by jury.

[3]   Thus, the question before us is whether an action brought by the State to enjoin dredge and fill development of marshland by a private property owner existed at common law or by statute at the time of the adoption of the 1868 Constitution. Only if such an action existed at that time need we determine whether the remedy sought is one at law respecting property. *See Kaperonis v. Highway Commission*, 260 N.C. 587, 133 S.E.2d 464 (1963) (condemnation proceeding not a cause of action at common law); *Belk's Department Store, Inc. v. Guilford County*, 222 N.C. 441, 23 S.E.2d 897 (1943) (dispute as to real estate tax valuation did not support right to jury trial at common law).

Our review of the cases suggests that prior to the legislative enactment of CAMA and the Dredge and Fill Act, a landowner had the unrestricted right at common law to dredge, fill and "reclaim" marshland on his property, even if the result was less beneficial to adjoining owners. *Richardson v. Boston*, 60 U.S. (19 How.) 263, 269, 15 L. Ed. 639, 642 (1857). *See also Parmele v. Eaton*, 240 N.C. 539, 83 S.E.2d 93 (1954); *Kelly v. King*, 225 N.C. 709, 36 S.E.2d 220 (1945); *Perry v. Morgan*, 219 N.C. 377, 14 S.E.2d 46 (1941); *Insurance Co. v. Parmele*, 214 N.C. 63, 197 S.E. 714 (1938). Absent the statutory authority conferred by CAMA and the Dredge and Fill Act, the State would not have had authority to seek an injunction of defendant's activity. Indeed, there would have been no cause of action and the State's suit would have been subject to dismissal at common law. We think it relevant to this point that until the adoption of CAMA and the Dredge and Fill Act, this State (like so many others) historically considered marshland a wasteland and generally encouraged its fill or drainage. *See* Earnhardt, *Defining Navigable Waters and the Application of the Public Trust Doctrine in North Carolina: A History and Analysis*, 49 N.C.L. Rev. 888, 888-92 (1971).

In holding that this action is one that "has always been accompanied by a right to trial by a jury," the Court of Appeals analo-

gized this action to "an action for damage done to real estate" and to "the ancient action to abate a nuisance." *Simpson*, 91 N.C. App. at 519, 372 S.E.2d at 314. While intuitively appealing, closer reflection shows these analogies miss the mark.

Under the complaint as filed, the State would have had no action for trespass to land. The State did not allege title to or a possessory interest in the marshland. Without such an allegation, there is no right to sue in trespass. *Matthews v. Forrest*, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952). Assuming, without deciding, that the State had an action at common law had the defendant deposited fill in waters or on lands held in trust for the public, *see State ex rel. Rohrer v. Credle*, 322 N.C. 522, 369 S.E.2d 825 (1988), the State made no allegation here that the marsh was so held. Thus, at common law and contrary to the interpretation of the Court of Appeals, the State's allegations would not have supported an action for damage done to real estate.

Nor would the complaint here have stated an action at common law to abate a public nuisance. This Court described a common law public nuisance thus:

> "Whatever tends to endanger life, or generate disease, and affect the health of the community; whatever shocks the public morals and sense of decency; whatever shocks the religious feelings of the community, or tends to its discomfort — is generally, at common law, a public nuisance . . . ."

*State v. Everhardt*, 203 N.C. 610, 618, 166 S.E.2d 738, 742 (1932) (quoting F. Tiffany, *Clark's Handbook of Criminal Law* § 115 at 345 (2d ed. 1902) ). Prior to adoption of the current statutes, this Court would not have considered the dredging or filling of privately owned marshland a public nuisance. Historically, the State promoted dredge and fill activity such as defendant's, for the State generally considered such marsh areas agricultural wasteland teeming with malarial mosquitoes. Through a series of legislative actions, the General Assembly vested title to the State's "swamplands" in the Literary Fund (later the State Board of Education) to help establish public education. 1837 N.C. Sess. Laws ch. 23; 1881 N.C. Sess. Laws ch. 200. The State generally defined swamplands as lands "too wet for cultivation and requiring drainage to fit them for that purpose." *Beer v. Lumber Co.*, 170 N.C. 337, 340, 86 S.E. 1024, 1025 (1915). The legislature expressed as a public purpose of these earlier statutes the promotion of swamp drainage and

cultivation. *Id.* Thus, at common law an action for nuisance would not lie against a North Carolina property owner charged with dredging or filling his or her own swampland.

The Court of Appeals reads *Bowman v. Malloy,* 264 N.C. 396, 141 S.E.2d 796 (1965), for the proposition that "a landowner charged with making a public nuisance of his property is entitled to a jury trial if timely demand" is made. *Simpson,* 91 N.C. App. at 519, 372 S.E.2d at 314. This is not an accurate reading of *Malloy.* In *Malloy,* the State brought an action for maintaining a nuisance as defined in N.C.G.S. § 19-1 (maintaining a place for purposes of assignation, prostitution, gambling, illegal sale of alcoholic beverages, etc.). In addition to an action in abatement, the State sought to padlock the premises and sell all furniture, fixtures, and personal property on the premises. The action in *Malloy* was not a mere action for abatement of a nuisance; it was criminal in nature, based on N.C.G.S. § 19-1, and worked a confiscation and forfeiture of property. As such, the defendant in that case was entitled to a jury trial. *See Sinclair, Solicitor v. Croom,* 217 N.C. 526, 8 S.E.2d 834 (1940).

Under CAMA and the Dredge and Fill Act, no forfeiture or confiscation of property is possible. The action is civil, not criminal. The relief sought in this case is defendant's compliance with permit requirements and restoration of the marshlands. The State did not seek enforcement of the penalty provisions. Had defendant participated in the permit process and had the Coastal Resources Commission refused a permit by final order, defendant might have had a right to a jury trial upon proper allegation that the final order of the Commission constituted a taking. N.C.G.S. § 113A-123(b) (1983). Here, defendant's answer merely denies that her property was subject to the permit process. Such a defense does not in any sense allege a taking and so affords her no statutory right to a jury trial.

The reference by the Court of Appeals to the decision of *Tull v. United States,* 481 U.S. 412, 95 L. Ed. 2d 365 (1987), is not apposite. *Tull* decided that a defendant charged with violation of 33 U.S.C. §§ 1251-1319, the Clean Water Act, had a right under the seventh amendment of the United States Constitution to a jury trial on the issue of liability in a suit for civil penalties. *Tull,* 481 U.S. 412, 95 L. Ed. 2d 365. However, "[t]he seventh amendment of the United States Constitution, guaranteeing jury trials in federal

courts, is not applicable to state courts." *In re Clark*, 303 N.C. 592, 606 n.8, 281 S.E.2d 47, 57 n.8 (1981). *E.g., New York Central R.R. Co. v. White*, 243 U.S. 188, 61 L. Ed. 667 (1917); *Letendre v. Fugate*, 701 F.2d 1093, 1094 (4th Cir.), *cert. denied*, 464 U.S. 837, 78 L. Ed. 2d 122 (1983).

The panel below reads *Tull* as concluding that the federal statutory action to restrain the filling of wetlands existed at common law as an action to abate a nuisance. The *Tull* Court reached no such conclusion. Rather, it only found such an action a useful analogy in determining whether the relief sought was equitable or legal. The *Tull* Court found that had the government sought injunctive relief, including restoration, free of the legal claims, no jury trial would have been necessary under the seventh amendment. *Tull*, 481 U.S. at 425-27, 95 L. Ed. 2d at 377-79.

Because we find that an action such as that which the State brought in this case neither existed at common law nor by statute at the time of the adoption of the Constitution of 1868, we need not address the Court of Appeals' determination that the action is one at law respecting property.

In conclusion, we hold that the trial court erred in granting defendant's demand for a jury trial in a proceeding seeking mandatory injunctive relief under CAMA and the Dredge and Fill Act. Moreover, the Court of Appeals erred in affirming the trial court. Accordingly, we reverse and remand this case to the Court of Appeals with instructions to remand to the Superior Court, Carteret County, with orders to deny defendant's demand for jury trial and for further proceedings consistent with this opinion.

Reversed and remanded.

Justice WEBB concurring in the result.

I agree with the result reached by the majority and with most of its reasoning. Nowhere in the majority opinion, however, is any mention of Article IV, Sec. 13 of the Constitution of North Carolina which provides in part:

> There shall be in this State but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which shall be denominated a civil action, and in which there shall be a right to have issues of fact tried before a jury.

I do not believe this section requires a jury trial because this is an action by the State to protect a public interest. If it were an action to protect a private right or redress a private wrong, I believe Article IV, Sec. 13 would apply. I feel the majority should take note of this part of the Constitution in its opinion.