The State of Iowa v. Raymond.

**3. PRAC-
TICE: fore-
closure;
confession
of judg-
ment.**

---

## THE STATE OF IOWA v. RAYMOND.

1. **Indictment: PERJURY.** In an indictment for perjury a portion of the
oath upon which the perjury was assigned, was that he, "the said Joseph
Raymond, saw the said Peter Martin enter upon the premises of the said
*Jason* Pangborn," and it was averred that in truth and in fact, the
said Joseph Raymond did not see the said Peter Martin enter upon
the premises of the said *Joseph* Pangborn: *Held,* That as it was evident
from the whole indictment that the name *Joseph* occurred in place of
*Jason* by a clerical mistake which was apparent to the "common under-
standing," it did not vitiate the indictment.

2. —— "GETTING" AND "GATHERING." A portion of the oath upon which
the perjury was assigned, was that the defendant "heard and saw the
said Peter Martin *getting* and carrying away from the premises of the said
Jason Pangborn, the corn of," &c., and the negative averment was that
"in truth and in fact the said Joseph Raymond did not see and hear the
said Peter Martin *gather* and carry away from the premises of the said
Jason Pangborn, the corn," &c. *Held,* That the use of the word "*gather*"
to negative "*getting*" corn, is not sufficient cause, under our code of
criminal practice, for arresting the judgment.

3. —— KNOWLEDGE. In an indictment for perjury, it is necessary to aver that the defendant knew the falsity of the matter testified to by him only in cases in which the assignment of perjury is upon the statement by the accused of his *belief*, or denial of his belief of the alleged false matter.

4. Criminal law: PERJURY: EVIDENCE. The evidence of one witness as to the falsity of the matter sworn to as averred in the indictment, supported by evidence of strong corroborative circumstances, is sufficient to convict of perjury.

5. —— WHEN PERJURIES NOT ASSIGNED MAY BE CONSIDERED. While a perjury not assigned in the indictment cannot be considered by the jury for the purpose of determining the guilt of the defendant upon such other perjury, yet if the evidence in the case of such other perjury was legitimately brought out before the jury in the development of the whole case, and related to the same oath and subject matter of the perjury charged, it may be properly considered in determining the question of corrupt intent in swearing to the false matter upon which the perjury was assigned.

*Appeal from Jackson District Court.*

THURSDAY, JUNE 21.

THE defendant was indicted, tried, convicted and sentenced to two years' imprisonment in the penitentiary, for the crime of perjury.

The offense is charged to have been committed by the defendant, in testifying as a witness in behalf of the State, on the trial of Peter Martin, before a justice of the peace, upon an information for larceny of corn from the field of one Jason Pangborn. The defendant, having taken exceptions to certain instructions and rulings of the court, prosecutes this appeal.

*William E. Leffingwell* for the appellant.

*F. E. Bissell*, Attorney-General, for the State.

The State of Iowa v. Raymond.

COLE, J. — I. So much of the charging part of the indictment as is necessary to the understanding and disposition of the points made thereon by the appellant's counsel, is as follows: "That the said Joseph Raymond, upon his said oath, stated, among other things, in substance and effect, the following, that is to say, that on the night of the 21st day of September, 1864, he, the said Joseph Raymond, saw the said Peter Martin enter upon the premises of the said Jason Pangborn, and heard and saw the said Peter Martin *getting* and carrying away from the premises of the said Jason Pangborn the corn of the said Jason Pangborn, at the time last aforesaid; whereas, in truth and in fact, the said Joseph Raymond did not see the said Peter Martin enter upon the premises of the said *Joseph* Pangborn on the night of the 21st day of September, 1864; and whereas, in truth and in fact, the said Joseph Raymond did not see and hear the said Peter Martin *gather* and carry away from the premises of the said Jason Pangborn the corn," &c. * *

It is objected, on motion in arrest of judgment, that the portion of the oath upon which the perjury is assigned, to wit, that he "saw the said Peter Martin enter upon the premises of the said Jason Pangborn," is not negatived by the averment that he "did not see Peter Martin enter upon the premises of the said *Joseph* Pangborn," and that the oath that he "heard and saw the said Peter Martin *getting* and carrying away" is not negatived by the averment that he did not see and hear the said Peter Martin *gather* and carry away.

These objections are not well taken. It is evident from the whole indictment, as well as from the immediate context, that the name "Joseph," instead of "Jason," is a clerical error. That this is a mere clerical error is so apparent that it is not possible for a person of "common

*Marginal notes:* 1. INDICTMENT: perjury. 2. —— "getting" and "gathering."

understanding" to be misled by it. *The State of Iowa* v. *Thompson*, 19 Iowa, 298.

Since it could not affect the substantial rights of the party, it is not a sufficient ground for reversal. Revision, § 4925.

The use of the word "gather," to negative "getting" corn, is not sufficient cause for arrest of judgment under our Code. The "substance and effect" of the former, in the connection used, is equivalent to the latter. It is doubtful whether such an objection would have been available even under the technical nicety of the common law. See Whart. Am. Cr. Law, §§ 405, 406, 407, 488 and 606, and authorities cited.

So far as relates to the objection in the motion for arrest, that the indictment does not charge that the prisoner *knew* the falsity of the matter testified to by him, it is only necessary to say that such an averment is not requisite except in cases where the assignment of perjury is upon the statement by the accused of his *belief* or denial of his *belief* of the alleged false matter. Whart. Am. Cr. Law, 5th ed., § 2261.

3. ——
knowledge.

II. The court gave to the jury very full and elaborate instructions. As a whole, they are quite as favorable to the prisoner as he had any right to ask; and in some particulars the instructions were more favorable than the law, as found in the books, would require.

3. CRIMIN-
AL LAW:
perjury.

Peter Martin was on trial for the larceny of corn, at the time the prisoner is alleged to have committed the perjury charged.

On the trial of the prisoner Peter Martin was called as a witness for the State, and contradicted the alleged false matter sworn to by the prisoner upon which the perjury is assigned. The only corroborative evidence to that of Martin was the testimony of two witnesses, that they had

together examined that portion of the corn field where the prisoner had sworn he saw and heard Martin gather corn; that their examination was made the second day after the alleged larceny, and they saw no tracks, or corn missing in that part of the field, although the ground was soft and their tracks very apparent.

And the further testimony of Martin's wife, that she and her husband went to bed before the time at which the prisoner swore he saw Martin get the corn, and that, although she slept soundly, she knows her husband did not go out that night, because no one could either go out or come in without her knowing it. The sufficiency of this corroborating evidence as well as the instructions in relation to it constitute one of the main grounds upon which defendant's counsel relies for a reversal.

The court, *inter alia*, instructed the jury, that "to support an indictment for perjury, the State must prove, 1st, the authority to administer the oath; 2d, the occasion of administering it; 3d, the taking of the oath by the defendant; 4th, the substance of the oath; 5th, the materiality of the matter sworn to; 6th, the introductory averments of the indictment; 7th, the falsity of the matter sworn to; 8th, the corrupt intention of the defendant; and unless each and every one of these necessary elements of the crime of perjury is established to your satisfaction, and beyond any reasonable doubt, the defendant cannot be convicted." It might, perhaps, be questionable whether the "reasonable doubt" should not arise upon the *whole* case instead of any *one element* or more of the crime; but this, of course, was not error to the defendant's prejudice, if it was error at all, which is a question we do not decide.

The court also instructed the jury that "the matter testified to must be established by evidence greater than that of one witness. Two witnesses, or one witness and strong corroborative proof, are required to establish the falsity of

the matter alleged to have been sworn to by the defendant on the trial before the justice of the peace: *and the corroborative evidence must be of such a character as to show in some degree the falsity of the matter sworn to by defendant, or* to convince the jury that such matter was false. But it is only in proof of the falsity of what was testified to that more evidence than of a single unsupported witness is required." * * * *

The italicised portion of this instruction is that upon which the defendant bases his objection. The old rule was, that two witnesses were required to prove the falsity of the matter upon which the perjury was assigned. This rule, however, has long since been repudiated, and the testimony of one witness and strong corroborative circumstances have been held sufficient. But evidence confirmatory of that one witness, in some slight particulars only, is not sufficient to warrant a conviction. *Rex* v. *Yates*, 1 Car. & Mars., 132.

It must be at least strongly corroborative of the testimony of the accusing witness. *Woodbeck* v. *Keller*, 6 Cow., 118. And the corroboration must be by independent circumstances, tending to show the same results and not merely that the account is probable. 1 Greenl. on Ev., §§ 257 to 259, and authorities cited in notes; 2 Whart. Am. Cr. Law, §§ 2275 to 2280, and authorities cited in notes; 2 Russ. on Cr., 544, 545.

There is possibly a doubt as to the meaning of the language, objected to, in the instruction. If the court intended by it to instruct the jury that any corroborative evidence which should show *in some degree* the falsity of the matter sworn to, would be sufficient to authorize them to convict, the instruction was clearly erroneous. But if, by it, was meant (which is more probable), that the corroborative evidence must show in some degree the *falsity of the matter sworn to*, as distinguished from evidence

corroborating the witness as to other matters stated by him, it was not necessarily erroneous.

That this latter construction is not only the more reasonable, from the language itself, but the one evidently intended by the court and understood by the jury, is apparent from a following instruction, to wit: " The jury will consider the character of the alleged corroborating facts and circumstances in the case, and unless they are such as could not exist consistently with the innocence of the defendant, the defendant must be acquitted.

Upon the instructions as a whole, given by the court, there was not error to the prejudice of the defendant.

III. The defendant's counsel asked the court to give to the jury several instructions which were refused. There was no error in refusing the first instruction, for aside from the incorrect statement of the matter alleged as perjury, that defendant "saw Peter Martin steal and carry away corn," instead of "getting and carrying away corn," it had been, in substance, already given by the court.

As to the second, that the jury could not consider any other perjury than that assigned, while it is true that they could not consider it for the purpose of determining his guilt upon such other perjury, yet, since the evidence in this case of such other perjury was legitimately brought out before the jury in the development of the whole case, and related to the same oath and subject matter of the perjury charged, they might properly consider it in determining the question of corrupt intent in swearing to the false matter upon which the perjury was assigned. The third instruction was properly refused, because, if the facts proved were as therein stated, it would not necessarily make the matter upon which the perjury was assigned, immaterial.

The fourth, as to the corroborative evidence, was given in substance by the court, except as to the statement of

The State of Iowa v. Raymond.

stealing, which was in itself incorrect. The fifth instruction asked, was to the effect that the testimony of Martin's wife did not corroborate him as to his not being out of the house, or in Jason Pangborn's field that particular night.

It was properly refused, for although her testimony could not be regarded as strongly corroborative, yet it did tend to a greater or less degree, to be judged of by the jury, to his corroboration. The sixth, seventh and eighth were either given in terms or in substance. The ninth instruction in regard to emblements not being the subject of larceny, embraced to that extent, a very correct legal proposition. But the conclusion of immateriality sought to be drawn therefrom, so far as this case is concerned, was clearly erroneous.

We have thus briefly reviewed the alleged errors, *seriatim*, except the one as to the sufficiency of the evidence; and as to this we can only say that the transcript presents such a state of case as renders the verdict of the jury conclusive upon us.

Affirmed.