STATE v. CLARENCE HILL, WILEY McRAE and JESSE WATKINS.

(Filed 15 December, 1943.)

**1. Perjury § 3—**

> In a prosecution for perjury, it is required that the falsity of the oath be established by two witnesses, or by one witness and corroborating circumstances.

**2. Same—**

> While the uncorroborated testimony of one witness might convince the jury, beyond a reasonable doubt, of the guilt of accused in a criminal trial for perjury, it is not sufficient in law; and instructions, therefore, that if the jury is so satisfied from the evidence, beyond a reasonable doubt, they should return a verdict of guilty, is erroneous as failing to comply with C. S., 564.

APPEAL by defendant Clarence Hill from *Burgwyn, Special Judge,* at 24 May Term, 1943, of GUILFORD.

The defendant Clarence Hill was tried upon a bill of indictment charging him with perjury. It appeared from the oral argument that other defendants were indicted on similar bills, and the causes were consolidated for trial. At the close of the trial, a nonsuit was entered as to Wiley McRae; and Jesse Watkins, also convicted, did not appeal. The present appeal concerns, therefore, only the defendant Clarence Hill.

Hill, a taxicab driver, had been charged with violation of the traffic laws—speeding—and was tried for that offense in the Municipal-County Court of the city of Greensboro. Upon the trial he testified in his own behalf, and out of his testimony there given arose the present charge of perjury.

Upon the trial of the present cause there was evidence that when Hill was tendered as a witness in his own behalf in the former trial, he took the usual oath as a witness, officially administered.

Major F. K. Kuykendall, prosecuting attorney of the Municipal-County Court, then testified that he remembered when Clarence Hill was tried in that court on 31 December, 1942; that Hill was duly sworn before he took the witness stand. Thereupon, Hill swore that he had not been working on 22 December, the day upon which he was allegedly stopped and arrested for speeding; that he did not drive the car described by the officer; and denied that he was speeding. He further swore that he did not haul anyone, and said he was doing Christmas shopping from about 4 o'clock to 8 o'clock.

H. M. Evans testified that he was a police officer of Greensboro on 22 December, and saw Clarence Hill that afternoon. Witness was going north on Summit Avenue when he saw a taxicab ahead of him pass two cars. Witness was making about 40 miles an hour at that time, and

was on an emergency call. Witness continued to follow the cab, which was gaining on him, and increased the speed of the police car to about 45 m.p.h. and got to 4th Street and Summit Avenue; the cab was still gaining on him. Witness was afraid to increase his speed any more because of the heavy fog and sleet, and just followed the cab. At Phillips Avenue the cab turned to the right, and witness also turned to the right. The cab stopped in about two blocks, and witness drew up beside the cab, pulled the side light of the police car, and ran down the window. He saw that it was Clarence Hill driving the cab. He was driving a two-tone Pontiac sedan with the name Silver Streak painted on the side. When witness pulled up beside Hill, two ladies got out of the cab. Witness then told defendant that he was making a charge of speeding against him. Defendant asked witness to give him a break, but witness told him that he should not be speeding that way.

This witness was present on 31 December, 1942, when the speeding case was tried in court, and heard Clarence Hill testify that he was not operating a cab on 22 December; that he had been Christmas shopping during the day and that he did not make any trips to Edgeville at all, and did not see him that day; that he was not the man that witness talked to out there, and did not know anything about the case. He also stated that the taxicab was parked in the parking lot at the cab stand and was not moved at all that day.

Mrs. Bessie Bell testified that on the day mentioned the defendant carried her and a girl companion to their destination near Phillips Street in Greensboro. As they got out of the cab a police car came up beside the cab and turned the lights on defendant, the man in the car saying, "Clarence, I have a charge against you for speeding." After some conversation, they drove away. Later she identified the defendant as the man who carried her home.

R. L. Ferrell, a police officer of the city of Greensboro, testified that on the evening of 22 December, 1942, Evans told him that he had a call on his way out and had stopped Clarence Hill, the defendant, for speeding, and had requested him to come to the police station. Later that night he and Evans went to the taxicab stand to see Hill, and waited about 50 minutes, but Hill was not there.

Miss Chriscoe testified that she was with Mrs. Bell when they were carried home on 22 December by a driver in a 1942 Pontiac.

Clarence Hill, testifying in his own behalf, stated that he operated the Silver Streak Taxicab, and now operated five cabs; also owned an automobile which he used for personal and private use.

He testified that on 22 December, 1942, he went down town and bought a few gifts, and that he stopped work on Sunday night for a few days; that he does have a Pontiac Taxi No. T-21233, and that when he

quit work on Sunday night he parked it back of the cab stand at 256 East Market Street, nearly in front of the Gate City Motor Company's place. The car has two sets of keys, one of which witness kept and the other was kept by Joe Moore, who drove the car some of the time, helping the defendant from Friday through Sunday night, but during the weekdays working only when he felt like it.

Defendant stated that he closed the car and locked it on that Sunday night and did not drive it Monday; that he had sufficient cars to take care of his business without using the Pontiac taxi. The car was there on Tuesday. On Tuesday defendant went down town and bought a few gifts for Christmas and took the red car, his private car, and went home. He came back up the street and went to Garland Watkins' house; from there he came to Market Street and picked up John Harris and went to have a few games of pool. He stayed at the Smoke Shop Pool Room until about 8:30 or quarter of nine, and did not drive the taxi out on Summit Avenue and Phillips Street that night. Defendant testified that he had no conversation with Mr. Evans at all that night—only saw him in the afternoon—and that he did not drive the taxi the next day. After leaving the pool room, he went straight home and so far as he knew, no one came to his home.

The next morning he called the cab office to see if any of the cars had been wrecked, since the evening before the weather was getting bad and cars were slipping about on the streets. He was then informed that nothing had happened except the police were looking for him. He then called police headquarters and was told that he was wanted, and went down there. There he was informed that there was a warrant against him for speeding, and Mr. Evans came in with a citation and asked him to sign it, which he refused to do. Evans then cursed him and told him that he had better sign it "damn quick" or he would go upstairs. Defendant posted a cash bond. Upon his inquiry, he was told that he was driving No. 1 Silver Streak, the Pontiac. Witness then related the circumstances leading to his identification by Mrs. Bell. Witness then repeated his statement that he did not drive the Pontiac automobile on 22 December on Summit Avenue or any other place, carrying Mrs. Bell, Miss Chriscoe, or anyone else. He repeated that he did not talk to Evans on Phillips Street, and stated that he did not know the officers wanted him until Wednesday morning when he went to his office.

Joe Evans testified that he did not know Clarence Hill personally, but that he was at the taxicab stand when Mr. Sheppard and a young woman came, Mrs. Bell. Sheppard called witness to the car and asked him if he was Clarence Hill, and witness answered, No. He asked if he drove for Hill or knew of him, and witness again answered, No, and told him he did not know where he lived.

Wiley McRae testified that the car in question had been parked near his cab stand, and that every time he returned to the lot on that day, that particular 1942 Pontiac cab was there. If the defendant moved the car at all, it was while this witness was making a trip.

A number of witnesses testified to the good character of the defendant.

Evidence not directly pertinent to an understanding of the decision is omitted.

Exceptions to the charge not pertinent to the decision are omitted. Defendant objected and excepted to the charge of the court as not complying with C. S., 564, in explaining the law relating to perjury and applying it to the evidence. This is the only exception discussed in the opinion.

There was a verdict of guilty. Defendant moved to set aside the verdict for errors of law, which motion was denied. The defendant was sentenced to the common jail of Guilford County for six months and assigned to work on the roads. From this judgment the defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*Hosea Price and H. L. Koontz for defendant Clarence Hill, appellant.*

SEAWELL, J. The defendant was convicted of perjury. His appeal challenges the sufficiency of the charge as an explanation of the law relating to that crime and its application to the facts. C. S., 564. In view of the nature of the crime and the restrictions which are thrown around the evidence which must be adduced to procure conviction, we are of the opinion that the objection is well taken. We do not find, on an inspection of the instructions, that the jury was advised that the defendant could not be convicted except upon the testimony of at least two credible witnesses or one such witness and corroborative circumstances. The rule is stated by *Chief Justice Stacy* in *S. v. Rhinehart,* 209 N. C., 150, 154, 183 S. E., 388, as follows:

"In prosecutions for perjury, it is required that the falsity of the oath be established by two witnesses, or by one witness and adminicular circumstances sufficient to turn the scales against the defendant's oath." *S. v. Hawkins,* 115 N. C., 712, 20 S. E., 623; *S. v. Peters,* 107 N. C., 876, 12 S. E., 74; *S. v. Sinodis,* 205 N. C., 602, 172 S. E., 190.

Conceivably, the uncorroborated testimony of one witness might produce in the minds of the jury the satisfaction to a moral certainty of the guilt of the accused; in other words, convince the jury beyond a reasonable doubt of such guilt; but it is not sufficient in law, and the instruction, therefore, that if the jury is so satisfied from the evidence beyond

a reasonable doubt they should return a verdict of guilty, while a satisfactory formula, in most cases, disregards conditions which the law declares essential to conviction of perjury, and therefore is not adequate.

The criminality of perjury is the violation of the sanctity of the oath, which, traditionally with English speaking people, is supposed to afford some security for a truthful statement. If the witness in his solemn adjuration has not the fear of God, a supplemental statute making perjury a felony might induce some fear of the law. However reprehensible and socially disturbing, a man cannot be convicted of crime for merely lying, although it may be a "lie with circumstance" or a "lie direct." But it takes the false testimony to falsify the oath. And, since experience has shown that frailty in that respect may not be confined to the one suspected person, the law, from ancient times, has not been willing to "take one man's word against another" upon a question of veracity, since, roughly speaking, it merely establishes an equilibrium. 41 Am. Jur., p. 37. At one time the law required the testimony of two witnesses; now, in almost every jurisdiction in this country, conviction may be had upon the testimony of one witness, corroborated by circumstances inconsistent with defendant's innocence and directly tending to corroborate the accusing witness. Anno. 111 A. L. R., 825. In many jurisdictions it is required that the evidence corroborating the witness for the prosecution must be of a "strong character," "strongly corroborative." The requirement as to the strength of such evidence is variously expressed. Practically all of the opinions require it to be of direct and independent force. *Cook v. U. S.,* 26 App. D. C., 427, 6 Ann. Cas., 810; *U. S. v. Hall* (D. C.), 44 F., 864, 10 L. R. A., 324; *S. v. Raymond,* 20 Iowa, 582.

We think it sufficient to say that the evidence, that is, the testimony of the witness, taken with the circumstances of corroboration, must convince the jury beyond a reasonable doubt before the accused can be convicted of perjury.

In the instant case the conviction rests almost, if not entirely, upon the evidence of two State's witnesses—Mrs. Bessie Bell and police officer H. M. Evans. Under the evidence, the usefulness of Mrs. Bell's testimony was in identifying the defendant as the man who carried her home in the Pontiac car on the evening he was charged with speeding. Miss Chriscoe, who accompanied Mrs. Bell on that trip, did not identify the defendant. The circumstances attending that identification by Mrs. Bell were before the jury. Let us suppose that the jury may have found Mrs. Bell honestly mistaken in her identification, or that her memory was at fault, or for any other reason discredited and rejected her testimony altogether. Would the mere fact that she was superadded to the panel of witnesses making the necessary two satisfy the law and justify

a conviction for no other reason than that two witnesses are arrayed against the accused, of whom the testimony of only one is received and credited?

We are persuaded the law did not intend merely to out vote the accused in requiring the testimony of two witnesses. The law was intended to afford the defendant a greater protection against the chance of unjust conviction than is ordinarily afforded in prosecuting for crime. It is analogous to prosecutions under C. S., 4339, which requires the sanction of corroboration before conviction.

In this case, of course, we have no opinion as to the defendant's guilt or innocence. We have merely illustrated the application of the law. It is not necessary for the trial court, figuratively speaking, to throw the book at the jury; but a substantial explanation of the law as applied to the evidence is required, and we cannot regard a clear statement of the conditions on which the defendant may be convicted as a matter of subordinate elaboration. Nor can we hold that its inadvertent omission by the able and impartial judge who tried this case as cured by the fact that, numerically speaking, two witnesses were arrayed against the defendant. That belongs to the mechanics, not to the philosophy, of the law.

There are other exceptions in the record upon which we do not pass, since they refer to incidents which may not recur. In failing to explain the law arising upon the evidence, there is error which entitles the defendant to a new trial. It is so ordered.

New trial.