### STATE v. R. L. WEBB.

(Filed 10 December, 1947.)

**1. Criminal Law § 52a—**

On motion to nonsuit the evidence must be considered in the light most favorable to the State.

**2. Perjury § 7—**

In a prosecution for perjury the burden is upon the State to prove beyond a reasonable doubt the falsity of the oath, and this must be established by two witnesses or by one witness together with adminicular circumstances.

**3. Same—Evidence that defendant knowingly made false oath in judicial hearing before officer having jurisdiction held sufficient for jury.**

In a proceeding instituted by defendant to have his stepmother-in-law committed to a State Hospital for insane, defendant swore to an affidavit before the Clerk of the Superior Court at the hearing that he had carefully observed her and believed her to be a fit subject for admission to the Hospital. The State's evidence tended to show that defendant had theretofore threatened to "get rid of" his stepmother-in-law one way or another, and introduced the testimony of a number of witnesses who had observed his stepmother-in-law that she was sane both before and after the commitment, and the testimony of an expert of the State institution that she showed no signs of abnormal mentality at the Hospital, and that she was released after two days. The State introduced further evidence for the

purpose of showing want of good faith on the part of defendant, that defendant procured the certificate of two doctors that they had examined the subject and were of the opinion that she was a fit subject to be admitted to the Hospital, whereas in truth the physicians had made no recent examination of the subject to defendant's knowledge, and their affidavits were without probative force. *Held:* The evidence is sufficient to be submitted to the jury in a prosecution for perjury.

**4. Criminal Law § 81c (3)—**

Where it does not appear what the answer of the witness would have been, an exception to the action of the trial court in sustaining the adverse party's objection to the question cannot be sustained, since it cannot be determined from the record that the exclusion of the testimony was prejudicial.

APPEAL by defendant from *Rousseau, J.,* at August Term, 1947, of MOORE. ·

Criminal prosecution tried upon indictment charging the defendant with perjury.

The defendant instituted a proceeding before the Clerk of the Superior Court of Moore County, on 20 March, 1947, to have Mrs. Molly Wilson, his stepmother-in-law, committed to the State Hospital in Raleigh, North Carolina, for care and treatment as a mentally disordered person. The defendant signed and swore to an affidavit before the Clerk to the effect that he had carefully observed Molly Wilson and believed her to be a mentally disordered person and a fit subject for admission into a hospital for the mentally disordered.

The evidence shows that on the same date, affidavits were procured from two licensed physicians who stated, under oath, that they had examined Mrs. Wilson and as a result of such examination it was their belief that she was suffering from a mental disease and was a fit subject for care and treatment at a hospital for mentally disordered persons.

Based upon these affidavits, the Clerk committed Mrs. Wilson to the State Hospital at Raleigh, North Carolina, for a period of 30 days, as a subject for mental examination and observation.

The State's evidence discloses that Dr. J. Symington, who signed one of the affidavits as to Mrs. Wilson's mental capacity on 20 March, 1947, had not, upon his own admission, seen or examined her for a period of three months prior thereto. The State introduced other evidence which tended to show Dr. Symington had not seen her professionally for more than a year prior to the date he signed this affidavit.

Dr. J. W. Wilcox, the other physician who signed the affidavit as to Mrs. Wilson's insanity on 20 March, 1947, admitted that he had not seen or examined her for several years prior to the date he signed the affidavit. He testified that he signed the affidavit upon the representations· of Dr. Symington as to her insanity as "a matter of professional courtesy" between doctors.

Dr. V. E. Lascara, Assistant Superintendent of the State Hospital at Raleigh, who was admitted by the defendant to be a medical expert, testified that about half an hour after Mrs. Wilson was admitted to the hospital on 16 April, 1947, he had an informal interview with her. "I found her fairly cooperative, slightly depressed, and did not find anything abnormal in her behavior at the hospital. She left the hospital on April 18. . . . From the short time I observed her I would not be inclined to make any definite statement as to whether she was sane or insane. In the duration of the time she was there she did not show any abnormal symptoms of mental illness."

A number of neighbors and friends of Mrs. Wilson went upon the witness stand and testified she was sane before and after her commitment.

The State's evidence further tended to show that the defendant is a man of bad character and had made the statement many times that "he was going to get rid of her (Mrs. Wilson) one way or another." He has lived in the same home with Mrs. Wilson for 10 or 12 years. Mrs. Wilson has a dower interest in the property and occupies one room in the home. Her husband has been dead about five years.

The defendant and members of his family offered evidence tending to show that Mrs. Wilson was very nervous, that she had "childish ways," and had threatened to buy poison and kill herself, she refused to eat with them, and had said, "I wish I was dead." The defendant testified she would not see a doctor, but would go "backwards and forwards through the house, grunting and hopping and kept me awake at nights. . . . I didn't know what else to do, but make the affidavits and let her be sent off for treatment and observation at the hospital."

Verdict: Guilty as charged in the bill of indictment.

Judgment: Six months in the common jail of Moore County, to be assigned to work under the supervision and control of the State Highway & Public Works Commission.

The defendant appeals and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*
*S. R. Hoyle and W. Clement Barrett for defendant, appellant.*

DENNY, J. The defendant's first assignment of error is to the failure of the court below to sustain his motion for judgment as of nonsuit. The evidence is conflicting but when considered in the light most favorable to the State, as it must be in passing upon such motion, we think it is sufficient to carry the case to the jury. *S. v. Johnson,* 226 N. C., 671, 40 S. E. (2d), 113; *S. v. Murdock,* 225 N. C., 224, 34 S. E. (2d), 69; *S. v. McMahan,* 224 N. C., 476, 31 S. E. (2d), 357; *S. v. Andrews,* 216 N. C., 574, 6 S. E. (2d), 35; *S. v. Adams,* 213 N. C., 243, 195 S. E., 822.

In a prosecution for perjury the burden is upon the State to prove beyond a reasonable·doubt the falsity of the oath and this must be established by two witnesses or by one witness and adminicular circumstances sufficient to turn the scales against the defendant's oath. *S. v. Peters,* 107 N. C., 876, 12 S. E., 74; *S. v. Hawkins,* 115 N. C., 712, 20 S. E., 623; *S. v. Rhinehart,* 209 N. C., 150, 183 S. E., 388; *S. v. Hill,* 223 N. C., 711, 28 S. E. (2d), 100.

In connection with the institution of the proceeding to commit Mrs. Molly Wilson to a hospital for the mentally deranged, the defendant took an oath as charged in the bill of indictment to the effect that he had carefully observed Mrs. Wilson and believed her to be a mentally disordered person and a fit subject for admission into a hospital for mentally disordered persons. The oath was taken in a judicial proceeding before an officer competent to administer oaths in a matter within the jurisdiction of such officer. And the affidavit made by the defendant was material to the issue pending before the Clerk of the Superior Court as to the sanity or insanity of Mrs. Wilson.

In addition to making the above affidavit the defendant got Dr. Symington to sign an affidavit in which he swore that he had examined Mrs. Wilson and found her to be a fit subject for admission to a hospital for the mentally disordered. As a matter of fact Dr. Symington had not seen or examined Mrs. Wilson, according to his testimony, for three months prior ·thereto. Moreover, the examination he had made of her was made at the instance of the defendant and his wife and such examination did not disclose sufficient evidence of mental disorder to warrant a commitment of Mrs. Wilson to a hospital for the mentally disordered; or at least Dr. Symington, according to his testimony, did not base his affidavit on his findings as to her mental condition at the time of such examination. He testified: "The reason that I signed the paper and recommended that she be accepted in the hospital, is there is insanity in the family, and when you find a person in the exceedingly nervous condition that she was, I consider it my duty as a physician to recommend that she be sent to Dix Hill (a hospital for the mentally disordered) for examination by a specialist and kept under observation for some time." However, it is further disclosed by the record that the insanity in the family, to which this witness referred, was in the family of Mrs. Webb, wife of the defendant. Mrs. Wilson married into this family but there is no evidence to the effect that she is related to them by blood. ·Consequently we think the testimony of Dr. Symington robs his affidavit of any probative value, and, therefore, does not support the contention of the defendant that he acted in the matter in good faith. Furthermore, it is admitted that the affidavit of Dr. Wilcox was made in the presence of the defendant and his wife, at the request of Dr. Symington as a professional

courtesy.    Dr. Wilcox testified that Dr. Symington told him he had examined her (Mrs. Wilson) "and told . . . as good a story of senile dementia as I had heard in a long time, and I signed it."

While the defendant was not tried for subornation of perjury, it would seem that the manner in which these affidavits were procured tends to show bad faith on his part.    He was present when the affidavits were made and he knew the examinations, referred to therein, had not been made.

The defendant insists, however, that he acted in good faith in having Mrs. Wilson committed to a hospital for mentally disordered persons and that this action is supported by the affidavits of the above licensed physicians, one of whom testified at the trial below that he still believes Mrs. Wilson is mentally disordered.    But the State introduced the testimony of five witnesses to the effect that they had known Mrs. Wilson over a long period of years and that she was a sane person.    The Assistant Superintendent of the State Hospital testified that during the two days Mrs. Wilson was committed to that institution "she did not show any abnormal symptoms of mental illness."    Further, the two licensed physicians upon whose affidavits the defendant relies to support him in his contention as to the mental condition of Mrs. Wilson on 20 March, 1947, by their own testimony in the trial below, we think tend to show bad faith on the part of the defendant rather than to sustain his contention of good faith.    The testimony as disclosed on the record is sufficient to sustain the verdict rendered by the jury.

The third assignment of error is based on the ruling of the court in sustaining objection by the State to the following question propounded to the defendant: "Did you make this affidavit willfully, and corruptly?" Conceding the question was a proper one, the record fails to show what the witness would have answered.    Therefore, the ruling must be upheld since no error is presented on the record.    *S. v. Utley,* 223 N. C., 39, 25 S. E. (2d), 195; *S. v. Thomas,* 220 N. C., 34, 16 S. E. (2d), 399.

We have carefully examined the remaining exceptions and they present no prejudicial error.

In the trial below we find

No error.